MANSFIELD TOWNSHIP BOARD OF EDUCATION, PROSE-
   CUTOR, v. STATE BOARD OF EDUCATION, MARY M.
   TOWNER AND LILLIAN BAYSDORF, DEFENDANTS.

Submitted October 17, 1924—Decided July 3, 1925.

1. By section 116 of the General School law of 1903, as amended
   by *Pamph. L.* 1912, *p.* 284, by which schools of this state are
   to be free to all persons over five and under twenty years of age
   who shall be residents of a school district, a resident of this state,
   in a broad sense, includes any person who comes into it and re-
   mains with the intent to make it his permanent home, but this
   legal status is not applicable to a child, who is brought or is
   sent into this state, by a parent or guardian who is a non-
   resident.
2. The permanent residence of a father is that of his child until
   the latter is emancipated, and a child of a non-resident parent,
   who is sent into this state by the parent, is not entitled to his
   free tuition in the public schools under the General School law.

On *certiorari* to the state board of education.

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *Joseph M. Roseberry & Son.*

For the defendants, *Wall, Haight, Carey & Hartpence.*

The opinion of the court was delivered by

KALISCH, J.   This cause was submitted on briefs, at the
October term, 1924, on a writ of *certiorari* sued out by the
prosecutor against the state board of education.   The cause
was erroneously entitled by counsel of the respective litigants
as Mary Towner, prosecutor-respondent, *v.* Mansfield Town-
ship Board of Education, appellant, and is so reported in 3 *N.
J. Mis. R.* 448; 128 *Atl. Rep.* 602; whereas it was the town-
ship which prosecuted the writ and the state board of educa-
tion which was defendant.   Neither Mary Towner nor Lillian
Baysdorf, a minor, was made a party to the writ, nor was

either served with a copy of it. The testimony taken in the cause developed that both Mary Towner and Lillian Baysdorf would be vitally affected by the outcome of the proceedings, and, hence, were necessary parties thereto, and, as it further appeared that Lillian was a minor, that her interests should be taken care of by a guardian *ad litem.* Decision was therefore reserved until a proper record was completed, and this appears now to have been done, and counsel of the respective parties have consented that the cause be disposed of on the state of the case and briefs originally submitted.

The facts present the legal question, Has Lillian Baysdorf acquired such a residence in Mansfield township as would entitle her to the benefit of the provision of section 116 of the General School law of 1903 (4 *Comp. Stat., p.* 4765), and as amended *Pamph. L.* 1912, *p.* 284, which, *inter alia,* provides that public schools shall be free to all persons over five and under twenty years of age, who shall be residents of the school district?

An application was made by Lillian Baysdorf on June 25th, 1923, to the board of education of the school district of Mansfield township, in Warren county, for the privilege of taking the first year of work in a high school, commencing on September 4th, the expense of tuition and transportation connected therewith, if any, to be paid by the board of education of said district, and that she desired to attend the Hackettstown high school. At the time of the making of this application Lillian was thirteen years of age. The board of education denied her application upon the ground that she was not a *bona fide* resident of the township. Thereupon, Miss Towner filed a petition with the state commissioner of public instruction, in which petition she set forth that she was a resident of the township of Mansfield, standing in *locus parentis* to Lillian, "who for the last two years has continuously resided with the subscriber-appellant herein, at her home" in the said township of Mansfield, and that she appealed to the state commissioner from the decision of the board of education by which it denied the application to fur-

nish transportation to the Hackettstown high school and tuition fees therein for the said Lillian. To this petition the Mansfield board of education made answer that Miss Towner "has added an addition to her dwelling-house and has advertised it as 'the Junior School' for children to be educated as far as the eighth grade;" that at the present time she has about ten or twelve children and sometimes a much larger number at her house; that she makes it a business to furnish these children board and she teaches them as far as the eighth grade; that she follows this as a business, and receives compensation for her services as a teacher, and also received compensation for boarding said children; that the said Lillian is not a resident of the township, but is simply a boarder at the home of the petitioner, and that Lillian is a resident of the city of New York. The parties were given an oral hearing at which the testimony of Miss Towner, Lillian and Lillian's father and others were taken, from which it appears that Lillian's father and mother are residents of the city of New York, where they have resided for many years. That they are and have been living in a state of separation for ten years or more, and that Lillian's father makes his home at his mother's, where his aunt also lives, and there is a legitimate inference from his testimony that he provides for their support. That for a period of ten years Lillian and an older sister were placed by their father under the care of a Mrs. Rasch, who resided in the Bronx, and until Lillian was sent by her father to Miss Towner's school, paying to the latter $60 a month for Lillian's board and tuition, and, in addition, provided Lillian with such necessaries as her comfort and well-being required.

The state board of education considered its task to be to decide whether Lillian Baysdorf was an actual resident of the school district of Mansfield township so as to entitle her to free high school facilities at the expense of that district, without regard to whether or not it was the place of her domicile, and accordingly held that, because Lillian's all-year-around residence was at the home of Miss Towner, to which her father had consented, for two years or more past, she was

entitled to be provided with free high school facilities by the board of education of the district. There is no case in this state which deals with the precise point in question. There are cases to be found in other jurisdictions which deal with the subject mooted here. The case relied on by the state board for the result it reached is *Yale* v. *West Middle District,* 59 *Conn.* 489, which will be later commented upon.

To determine properly whether or not Lillian is entitled to free school facilities, in view of the circumstances as disclosed by the testimony as to her residence in New Jersey, we must not only have recourse to the constitutional provision and statute relating to the education of children residing in this state in our public schools, but also to consider the sound public policy upon which these provisions were designed to rest.

Article 4, section 7, *placitum* 6 of the state constitution, *inter alia,* declares: "The legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children in this state between the ages of five and eighteen years." It needs no argument to demonstrate the unreasonableness of any view that tends to uphold a theory that this declaration is designed to include children from other states who may be sent by their parents or guardian into this state, and who actually take up their residence here for instruction in our public schools. By section 116 of the General School law of 1903, *supra,* as amended in 1912, page 284, it is provided: "Public schools shall be free to all persons over five and under twenty years of age, and to such persons over the age of twenty years as the board of education of any school district may deem it wise to offer instruction, who shall be residents of the school district. Non-residents of a school district, if otherwise competent, may be admitted to the schools of said district with the consent of the board of education, upon such terms as said board may prescribe; provided, that the authority to charge tuition for non-resident pupils conferred by this section shall not apply to non-resi-

dent pupils transferred to any district by an order of the county superintendent of schools."

Considering the facts of the case most favorably to Lillian's application for admission to the high school, we cannot fail to observe that they fall short of establishing any legal right in her to the privilege she seeks, since the facts relied on in her behalf do not prove that she was a domiciliary resident of the school district, which, in our view, seems to be necessary. The fact that she intends to remain in the home of Miss Towner during her attendance at the high school, or for an indeterminate period, does not make her residence a permanent one, especially since it does not appear that she was emancipated or was under the legal control of Miss Towner, but, on the contrary, it appears that she was in neither situation, and that her father, who is domiciled and actually resides in the State of New York, will continue to make provision for her future support and comfort.

The term "a resident," in a broad sense, includes any person who comes into this state and remains here with the intention to make it his permanent abode. But this legal status is not applicable to a child who is brought or sent into this state by a parent or guardian who is a non-resident, for the purpose of receiving an education in the public schools of this state. The permanent residence of the father is that of the child, until the latter is emancipated and chooses a place of residence of its own. Considerable force is derived by this view from the provisions of the School law relating to compulsory education of children in our public schools. Thus, for instance, section 153 of the School law (4 *Comp. Stat., p.* 4775) provides, that every parent, guardian or other person having control of a child between the ages of seven and seventeen years, inclusive, shall cause such child to regularly attend a day school, &c. The succeeding section 154 defines, in a measure, the character of the control of the child, by providing that any parent, guardian or other person having the legal control of any child who shall fail to comply with the provisions of section 153, &c. So, that it is clear that the

persons who are designated by the statute upon whom the duties outlined by it rests are parents, guardians or persons having legal control of the child.

Now, the phrase "legal control" signifies a status of the person in whose custody the child is. It cannot reasonably mean the relation between pupil and teacher, which control begins and ends with the school sessions, or the relation existing between the teacher and her pupil boarder, however intimate their friendship may be.

The phrase "other persons having legal control" would manifestly include foster parents who have lawfully adopted children, or those to whose care and custody children are committed by operation of law, &c. By applying the maxim *noscitur a sociis* to the phrase used, the persons indicated by the sections, as those having legal control, must have the legal status of parent or guardian.

The testimony fails to show that any such situation existed in the instant case. The case of *Yale* v. *West Middle School District, supra;* relied on by the state board of education, appears to have been decided strictly upon the language used in the School act of that state, to which Chief Justice Andrews refers and says: "All through these sections the expression 'those having the care of children' is used as exactly equivalent to parents or guardians, and nowhere is it indicated that the duty to send children to school, or the duty of the district to furnish instruction, depends on anything other than the residence of the child. All distinction between domicile and actual residence seems to be carefully excluded." In these respects our School law differs essentially from the one in Connecticut, in that the duty to send children to school devolves upon those having *legal control* of them, such as a parent or guardian, and that actual place of sojourn of the child, whether for a long or short period, does not establish its residence within the meaning of the School law, unless it is the place of residence of its parent or guardian or other person having legal control of it. A child, in law, can have no residence of its own, and can only lawfully acquire one when it has been emancipated.

Its residence under the School law follows that of its parent or guardian or other person having legal control of it.

The various sections of our School law exhibit a state policy to confine children to attend the public schools in the respective district where their parents or guardians reside.

The School law requires the consent of the local board of education or of the county superintendent to the attendance of a child at a public school in a district other than the one in which it actually resides. It does not seem consistent with sound public policy to open our public schools to the admission of pupils from other states and whose parents reside there to be educated here at the expense of the taxpayers. The mere length of time of Lillian's sojourn at Miss Towner's residence is inconsequential. Such a situation might easily manifest itself in every case where parents or guardains send children in their care to be educated in the public schools here, and who were boarded and lodged at the residence of a relative or friend residing in the school district.

The testimony before us does not sustain the finding of the state board of education that Lillian was a *bona fide* resident of the school district, and, hence, entitled to have the local board of education furnish her with transportation to and from the high school at Hackettstown and to pay her tuition therein.

For the reasons herein given the order of the state board of education is set aside, and the action of the local board of education is affirmed.