431 F.Supp. 231 (1977)
EAST TEXAS GUIDANCE AND ACHIEVEMENT CENTER, INC., a Texas Corporation, Individually and as next friend for David August, et al.
v.
Dr. Martin L. BROCKETTE, State Commissioner of Education for State of Texas and Executive Secretary for the State Board of Education for Texas, et al.
No. TY-76-113-CA.
United States District Court, E. D. Texas, Tyler Division.
April 4, 1977.
*232 Kenneth R. Barron, Tyler, Tex., for plaintiffs.
Tracy Crawford, Ramey, Flock, Hutchins, Grainger & Jeffus, Tyler, Tex., for White-house Independent School Dist.
John R. Brumbelow, Tyler, Tex., for Chapel Hill Independent School Dist.
*233 Elizabeth B. Levatino, Asst. Atty. Gen., State of Texas, Austin, Tex., for State of Texas.
Before GOLDBERG, Circuit Judge, and FISHER and STEGER, District Judges.

MEMORANDUM OPINION
This is a suit brought by the East Texas Guidance and Achievement Center, a commercial child-caring institution, on behalf of itself and certain children who reside at that institution. The Defendants in this suit are Dr. Martin Brockette, the Commissioner of Education for the State of Texas, the Superintendent and Board of Trustees of the Whitehouse Independent School District, and the Superintendent and Board of Trustees of the Chapel Hill Independent School District.
The Plaintiffs are complaining of section 21.0311 of the Texas Education Code. Section 21.0311 provides as follows:
(a) Notwithstanding any other provision of this code, a child who resides at a child-caring institution and whose maintenance expenses are paid in whole or in part by another state may not be admitted to a public school unless the child-caring institution pays tuition for the child equal to the actual cost of educating a child enrolled in a similar educational program in the district.
(b) The State Board of Education shall establish formulas governing the calculation of tuition rates. All tuition charges shall be submitted to the commissioner of education for approval.
(c) The attendance of the child shall not be counted for purposes of allocating state funds to the district.
The effect of this statute is that students who are wards of states other than Texas must pay tuition to attend the public schools in Texas. The Plaintiffs assert that this statute discriminates against them and violates the equal protection clause and the due process clause of the Fourteenth Amendment to the United States Constitution. The Plaintiffs further assert that rights guaranteed to them under the First and Fifth Amendments of the United States Constitution have been violated, but their pleadings fail to specify exactly which First and Fifth Amendment rights were violated. These alleged denials of First and Fifth Amendment rights were not urged in the briefs, and the Court determines that the Plaintiffs are no longer relying on them in their constitutional attack on the statute in question.

Due Process of Law
The Plaintiffs assert that the statute in question deprives them of due process of law because it deprives them of any input into the determination of the tuition rate that should be charged. According to the Plaintiffs, the State Commissioner of Education has approved exorbitant tuition rates which were determined by the school districts in accordance with formulas which the individual school districts themselves have established, all without giving notice and an opportunity to be heard to the Plaintiffs.
The Defendants in this cause contend, in response to the due process claims, that the establishment of the formula by the State Board of Education (hereinafter referred to as the State Board) under which the tuition rates were to be calculated constitutes an exercise of the rule making function of the State Board, and one has no due process right to a hearing prior to an administrative body's exercise of its rule making duty. The Defendants also contend that a public hearing was held before the formula in question was adopted, and further, that state administrative remedies provide the Plaintiffs with an adequate forum for protesting any tuition rates to which they object.
After consideration of the briefs, the pleadings, and the stipulations of facts, the Court is of the opinion that the statute in question does not deprive the Plaintiffs of their right to due process of law guaranteed to them under the Fourteenth Amendment.
Subsection (b) of section 21.0311 provides that the State Board of Education *234 shall establish formulas which govern the calculation of tuition rates. In the Court's view, this determination constitutes an exercise by a governmental agency of its rulemaking function, and there is no constitutional requirement for public hearings before a government agency exercises its rule-making authority. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944); Bi-Metallic Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); California Citizens Band Ass'n v. United States, 375 F.2d 43 (9th Cir. 1967), cert. den., 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967); Parsons v. United States Postal Service, 380 F.Supp. 815 (D.N. J.1974).
But even if it may be said that due process required a hearing before the State Board adopted the formula for calculating tuition rates, a hearing which afforded due process to the Plaintiffs and similar parties was held by the board. The Texas Open Meetings Law, Tex.Rev.Civ.Stat.Ann. art. 6252-17 (Supp.1975-1976) requires that, with certain exceptions irrelevant to this case, every meeting or session of every governmental body shall be open to the public, and further, a state governmental body, such as the State Commission of Education, shall furnish, before each meeting, written notice to the Secretary of State which tells the date, hour, and subject of the meeting, and the Secretary of State shall post the notice, for at least seven days preceding the day of the meeting, on a bulletin board located in the main office of the Secretary of State at a place convenient to the public. Any action taken at a meeting which is held in violation of the Texas Open Meetings Law can be invalidated by judicial action. Lower Colorado Riv. Auth. v. City of San Marcos, 523 S.W.2d 641 (Tex.1975).
There is no indication that the meeting at which the State Board established the formula was not held in compliance with the Texas Open Meetings Law. In the Court's opinion a meeting which complied with the open meetings law would provide to the Plaintiffs a proper hearing. If the Plaintiffs believe that the meeting at which the formula was established was not held in compliance with the open meetings law, the Plaintiffs may seek to have the formula set aside in the appropriate state court.
The laws of Texas afford to the Plaintiffs a further procedure for redressing any grievances they may have concerning either the formula established for calculating tuition rates, or the actual tuition rate charged. Section 11.13 of the Texas Education Code provides:
(a) Persons having any matter of dispute among them arising under the school laws of Texas or any person aggrieved by the school laws of Texas or by actions or decisions of any board of trustees or board of education may appeal in writing to the commissioner of education, who, after due notice to the parties interested, shall hold a hearing and render a decision without cost to the parties involved, but nothing contained in this section shall deprive any party of any legal remedy.
(b) The decisions of the commissioner of education shall be subject to review by the State Board of Education.
(c) Any person, county, or school district aggrieved by any action of the Central Education Agency may appeal to a district court in Travis County, Texas. Appeals shall be made by serving the commissioner of education with citation issued and served in the manner provided by law for civil suits. The petition shall state the action from which the appeal is taken, and if the appeal is from an order of the State Board of Education, shall also set out the order, or relevant portion thereof. Upon trial the court shall determine all issues of law and fact.
Under this statute, if the Plaintiffs take issue with the formula established by the State Board, they may appeal the decision of the State Board to the state district court in Travis County, Texas. If they take issue with the tuition rate charged by the school district, they may appeal the rate to the State Commissioner of Education, whose decision may be appealed to the State Board of Education. As previously *235 stated, the decisions of the State Board are appealable to the state district court in Travis County, Texas.
The term "due process of law" used in the Fourteenth Amendment is an abstract one, and the meaning can be elusive. The type of procedures that due process may require depends on the precise nature of the government function involved as well as the private interest that has been affected by the governmental function. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).
Considering the private interest involved and the nature of the government function complained of in this case, the Court holds that the procedures provided by the laws of the State of Texas comply with the requirements of the Fourteenth Amendment due process clause, and the Plaintiffs have not been deprived of due process of law in any respect.

Equal Protection
The Plaintiffs' assertion of a denial of rights guaranteed them under the equal protection clause of the Fourteenth Amendment is two-fold.
The Plaintiffs first assert that section 21.0311 deprives them of equal protection of the laws because it does not require payment of tuition for the education of all children residing within the state who are receiving some part of their maintenance expenses from another state, but only requires the payment of tuition for those children who are receiving maintenance expenses from another state and who reside in a facility known as a child-caring institution. The Plaintiffs base this alleged distinction and resulting discrimination on the definitions found in the Texas Child Care Licensing Act. A "child care institution" is defined in the Texas Child Care Licensing Act as a facility which provides care for more than twelve children for twenty-four hours a day. Tex.Rev.Civ.Stat.Ann. art. 695a-3 (Supp.1976). The Child Care Licensing Act further defines a "foster group home" as a child care facility which provides care for seven to twelve children for twenty-four hours a day, and a "foster family home" as a child care facility which provides care for not more than six children for twenty-four hours a day. Tex.Rev.Civ. Stat.Ann. art. 695a-3 (Supp.1976). The Plaintiffs assert that the term "child care institution," as used in section 21.0311 of the Education Code, has the same meaning as that term used in the Child Care Licensing Act. Thus, according to the Plaintiffs, a child who receives a part of his expenses from some other state and who lives in a facility which falls within the definition of a foster group home or a foster family home, is required to pay no tuition for his education, while such a child who lives in a facility that houses twelve or more children, and thus qualifies as a child care institution, must pay the tuition.
The Defendants first respond to the Plaintiffs' assertions by contending that the term child care institution does not necessarily have the same meaning in the Child Care Licensing Act as it does in section 21.0311 of the Education Code. According to the Defendants, the term may include all child care facilities in the state, although it has not as yet been interpreted by the state courts. The Defendants assert that since, in their view, the term is ambiguous and could possibly be interpreted to eliminate the Plaintiffs' constitutional objections, this is a classic case for the abstention doctrine to be invoked. The Defendants contend that the case should therefore be dismissed to await an interpretation of the term by the state courts.
The Defendants further contend that if the Court does not abstain and chooses to rule on the merits, the rational basis test should be applied, and under this test, section 21.0311 cannot be found to be violative of the equal protection clause.
The Defendants' plea for abstention possibly has some merit. However, abstention is a discretionary matter and considering this case as a whole, the Court feels that its ruling on this issue will not infringe on the rightful independence of state governments or cause any unnecessary friction *236 in federal-state relationships. Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
Turning to the merits, the Court observes that the statute in question invokes no suspect criteria such as race,[1] sex,[2] or national origin,[3] and the Plaintiffs have not asserted a denial of any fundamental right,[4] such as the right to vote;[5] therefore, the statute need not survive the strict scrutiny test in order for the Court to find it constitutional. It need only withstand the rational basis test. Graham v. Richardson, 403 U.S. 365, 92 S.Ct. 1848, 29 L.Ed.2d 534 (1971).
Under the rational basis test, the standard to be applied is whether the challenged statute rationally furthers a legitimate state purpose or interest. San Antonio School District v. Rodriguez, supra; McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). Further, under the rational basis test, the challenged statute carries a presumption of validity. San Antonio School District v. Rodriguez, supra; Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).
According to the Defendants, the state interest or purpose involved here is seeing that the financial integrity of the components of the state education system, i.e., the school districts, is preserved, and that the taxpayers of Texas are not saddled with the burden of financing the education of children who are wards of other states. In the Court's opinion, this is certainly a legitimate state interest. The inquiry therefore turns to whether the statute in question is rationally related to the state's purpose.
According to the Plaintiffs' analysis of the statute, it requires payment of tuition for only those children residing in child-caring facilities housing more than twelve children, while those housing twelve or less may attend school with no payment of tuition.
Assuming arguendo that the Plaintiffs are correct in their interpretation of the statute, the Court cannot say that the statute in question has no rational basis to *237 the objective of the legislature previously discussed. The statute, as interpreted by the Plaintiffs, applies to those child care facilities housing the greatest number of children. It can reasonably be assumed that that class of child-caring facilities which houses the greatest number of children has the greatest impact on the local school district in terms of the number of children placed in the school system. The fact that the state legislature might have furthered its purpose more completely or more equitably does not warrant a conclusion that the statute used to accomplish the purpose is unconstitutional. Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "The problems of government are practical ones and may justify, if they do not require, rough accommodations illogical, it may be, and unscientific." Metropolis Theatre Co. v. city of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393. The Court cannot say that a statute, which requires payment of tuition for the education of children who reside in facilities that house more than twelve children, while failing to require the payment of such tuition for children living in facilities housing twelve or less children, is not rationally related to the goal of preserving the financial integrity of the school districts throughout the state, and of preventing the taxpayers of the state from paying for the education of children who are wards of other states. The Court therefore holds that this distinction in the statute, if indeed such a distinction exists, does not deny to the Plaintiffs the equal protection of the laws. By so holding, the Court does not mean to imply that this statute best fulfills the objectives of the legislature. Dandridge v. Williams, 397 U.S. at 487, 90 S.Ct. 1153. That is not the question. The Court holds only that this statutory discrimination alleged by the Plaintiffs is not violative of the Fourteenth Amendment equal protection clause.
The second prong of the Plaintiffs' equal protection attack on section 21.0311 is that under the statute, the tuition rates charged to students vary from district to district. According to the Plaintiffs, this disparity between the rates charged by the different districts deprives them of the equal protection of the laws.
This contention of the Plaintiffs is also without merit. Subsection (a) of section 21.0311 provides that the school district must charge tuition equal to the actual cost of educating the child. It would seem beyond dispute that the cost of educating a child can vary from school district to school district. The Plaintiffs do not contend that the districts are not charging tuition at rates based on the actual cost of educating the child, as directed by the statute. The Plaintiffs complain only of the fact that the tuition rates charged vary from district to district.
The Court cannot hold that this variance in the tuition rates denies the Plaintiffs equal protection of the laws. Applying the rational basis test, the Court determines that this portion of the statute, which requires payment of tuition equal to the actual cost of educating the student, is rationally related to the state's objective, and this portion of the statute does not deprive the Plaintiffs of the equal protection of the laws.
In summary, the Court holds that the statute in question violates neither the equal protection clause nor the due process clause of the Fourteenth Amendment, and the Plaintiffs' constitutional challenge to this statute is without merit. The case will therefore be dismissed with prejudice.
NOTES
[1] Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).
[2] Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).
[3] Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).
[4] The Plaintiff children in this case will of course be deprived of an education if the statute is allowed to stand and their tuition is not paid. But in view of the ruling of the Supreme Court in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court does not believe that it can say that the right to attend school is a fundamental constitutional right sufficient to invoke the strict scrutiny test.

At the hearing of this case, the Court raised the question of whether the requirement of payment of tuition on the part of these students who are wards of other states constituted an infringement on the right to travel, and this issue was briefly touched on in the briefs of the parties. The standard to be applied when one is considering whether a statute has such an impact on interstate travel as to render it unconstitutional is less than clear. Memorial Hospital v. Maricopa County, 415 U.S. 250, 256-257, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Cole v. Housing Authority of City of Newport, 435 F.2d 807 (1st Cir. 1970). However, the Court concludes after an examination of the authorities in this area, that this statute does not have such an impact on one's right to travel interstate as to invoke the compelling state interest test. The Court is of the opinion that the statute in question will not deter migration, and further that the statute does not penalize the exercise of the right to travel. Memorial Hospital v. Maricopa County, supra. The statute does not apply to a child who merely exercises his right to travel and migrates into the state. It applies only to children who reside at child-caring institutions and whose maintenance expenses are paid for in whole or in part by other states; i.e., children who are wards of other states. The question of the statute's applicability or inapplicability to particular persons does not turn on whether or not the child has exercised his right to travel interstate, but on whether he is a ward of another state.
[5] Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).