Maria ARREDONDO as next friend for Andres Lopez, Jesus Carrillo as next friend for Fidel Alvares, Mrs. Artino Garza as next friend for Dolores Michelle Rodriguez, Oralia Martinez as next friend for Delia and Roberto Morales, Flora Falcon as next friend for Rita Gomez, Antonio Gutierrez as next friend for Silvestre Marquez Lopez, and Victoria Martinez as next friend for Marta Gutierrez-Gonzalez, Plaintiffs,

v.

M. L. BROCKETTE, Commissioner of Education in his official capacity, the Texas Education Agency, Pharr-San Juan-Alamo Independent School District, McAllen Independent School District, Mission Independent School District, Harlingen Independent School District, and Arturo Guerra, Rodney Cathy, Kenneth White, and Dan Ives, Individually and in their official capacities, Defendants.

Civ. A. No. B–77–296.

United States District Court,
S. D. Texas,
Brownsville Division.

Dec. 19, 1979.

Edward J. Tuddenham, Texas Rural Legal Aid, Inc., Farm Worker Division, Hereford, Tex., David Horton, Timoteo E. Gomez, Texas Rural Legal Aid, Inc., Brownsville, Tex., James S. Herrmann, Texas Rural Legal Aid, Inc., Harlingen, Tex., for plaintiffs.

Gregory Wilson, Asst. Atty. Gen., Austin, Tex., for defendants Brockette and Texas Education.

Travis Hiester, McAllen, Tex., for defendant McAllen ISD.

Mario E. Ramirez, McAllen, Tex., for defendant Pharr-San Juan-Alamo ISD.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAZEN, District Judge.

As will be more fully detailed below, the instant suit was originally filed asking the Court to declare unconstitutional a state statute and to enjoin the attempted enforcement of same. A hearing was held on October 26, 1979, at which time evidence on the merits was received. Pursuant to Rule 52, Federal Rules of Civil Procedure, the Court now submits its Findings of Fact and Conclusions of Law. Virtually all of the findings of fact are based upon stipulations made between the parties.

### FINDINGS OF FACT

1. Both Plaintiff Roberto Morales and Plaintiff Rita Gomez are United States citizens.

2. Each child is over five years of age and under eighteen years of age.

3. Plaintiff Roberto Morales lives within the McAllen Independent School District for the primary purpose of attending school and learning English.

4. Plaintiff Rita Gomez lives within the Pharr-San Juan-Alamo School District for the primary purpose of attending school.

5. Neither Plaintiff resides with his or her parent, legal guardian, or other person

having lawful control of him under a court order.

6. Neither Plaintiff has a parent, legal guardian, or other person having lawful control of him residing in the McAllen or Pharr-San Juan-Alamo School Districts.

7. Both Plaintiffs would otherwise be eligible for admission to the public free schools under the provisions of Tex.Educ. Code Ann. tit. 2, § 21.031(c) (Vernon Supp. 1978), which provides:

The board of trustees of any public free school district of this state shall admit into the public free schools of the district free of tuition all persons who are either citizens of the United States or legally admitted aliens and who are over five and not over 21 years of age at the beginning of the scholastic year if such person or his parent, guardian or person having lawful control resides within the school district.

8. Both Plaintiffs were denied admission to the Texas free schools under the provisions of Tex.Educ.Code Ann. tit. 2, § 21.-031(d) (Vernon Supp.1978), which provides:

In order for a person under the age of 18 years to establish a residence for the purpose of attending the public free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is not for the primary purpose of attending the public free schools. The board of trustees shall be responsible for determining whether an applicant for admission is a resident of the school district for purposes of attending the public schools.

9. Plaintiff Roberto Morales began living in McAllen Independent School District at the beginning of the 1977 school year and has continuously resided there since that time.

10. Plaintiff Roberto Morales only intends to reside in the McAllen Independent School District until he completes his education.

11. While Plaintiff Roberto Morales was denied admission to the McAllen Independent School District in 1977 and 1978, he was granted permission to attend school in November, 1978, contingent upon the payment of tuition. (See Pl.Exh. No. 2).

12. Plaintiff Roberto Morales and the person with whom he is residing are both indigent.

13. In November, 1978, tuition in the amount of $378.00 was paid on behalf of Plaintiff Roberto Morales by the Texas Rural Legal Aid, Inc. The parties apparently dispute whether these funds were those of the corporation itself or whether they were actually furnished by the family of Morales. Insufficient evidence was presented to enable the Court to resolve this point but the Court regards the issue as irrelevant to the ultimate disposition of the case. (Pl.Exh. No. 3).

14. Plaintiff Roberto Morales has not paid tuition for the Spring, 1978, or Fall, 1979, semesters and he was originally informed that his continued enrollment was conditioned upon the payment of all monies due and the availability of space.

15. Plaintiff Roberto Morales was expelled from school on November 28, 1978, for failure to pay tuition. On December 12, 1979, this Court issued a preliminary injunction returning him to school conditioned upon his first posting a bond in the sum of $1,224.00 to secure Defendant McAllen School District's claims for tuition against Plaintiff. The Plaintiff is now in school pending ultimate determination of this case on the merits.

16. Plaintiff Rita Gomez only intends to reside in the Pharr-San Juan-Alamo School District until she completes her education.

17. Plaintiff Rita Gomez was denied admission to school for the 1979–80 school year by officials of the Pharr-San Juan-Alamo School District.

18. Plaintiff Rita Gomez and the person with whom she is residing are both indigent.

19. Plaintiff Delia Morales, a United States citizen and the sister of Plaintiff

Roberto Morales, was also denied admission to the McAllen Independent School District, pursuant to § 21.031(d). She was then admitted upon paying tuition, but subsequently withdrew from school and returned to Mexico. Her tuition was refunded by the McAllen School District. *See* (Pl.Exh. 5).

20. According to admissions contained in the pleadings, Plaintiff Fidel Alvares, a United States citizen, was also denied admission to the McAllen Independent School District, pursuant to § 21.031(d), but no further evidence was presented either in support of or in opposition to his claim.

21. According to the pleadings, Plaintiff Andres Lopez, a United States citizen, was originally denied admission to the Pharr Independent School District, pursuant to § 21.031(d), but was subsequently admitted. No further evidence was presented either in support of or in opposition to his claim.

22. Prior to trial, the Plaintiffs voluntarily dismissed their cause of action as to Defendants Harlingen Independent School District and Dan Ives. The dispute of Plaintiffs Silvestre Marquez Lopez and Marta Gutierrez-Gonzalez was with these Defendants; therefore, their claims will not be adjudicated herein.

23. Prior to trial, Plaintiffs moved and were granted permission to dismiss, without prejudice, their cause of action against Defendants Mission Independent School District and Kenneth White. Since, according to the motion, no known Plaintiffs are currently being excluded from the district, the claim of Plaintiff Dolores Michelle Rodriguez has been rendered moot and incapable of adjudication.

24. None of the adults with whom the Plaintiffs reside desire to become the legal guardian or legal custodian of the child who lives with them.

25. The Texas statute in question operates to absolutely deprive a child of an education if it is determined that the child resides apart from his or her parent, legal guardian or one having lawful control over him or her for the primary purpose of attending the free public school and that child is indigent.

26. If Section 21.031(d) of the Texas Education Code were declared unconstitutional, it would, in all probability, cause the immediate enrollment of thousands of children from other states and countries who are United States citizens whose parents do not reside within the relevant school district. Furthermore, the enrollment would probably increase significantly each year.

27. The legislative classification imposing the residency requirement applies to intrastate school district transfers as well as transfers of children from other states and countries.

28. Declaring the statute unconstitutional would cause substantial numbers of intra-district transfers, which would further cause school populations to fluctuate. Also, the intrastate migration of students between school districts would cause problems in the athletic programs by possibly encouraging the recruitment of athletes.

29. Fluctuating school populations would make it impossible to predict enrollment figures—even on a semester-by-semester basis, causing over-or-under-estimates on teachers, supplies, materials, etc.

30. The increased enrollment of students would cause overcrowded classrooms and related facilities; over-large teacher-pupil ratios; expansion of bilingual programs; the purchase of books, equipment, supplies and other customary items of support; all of which would require a substantial increase in the budget of the school districts.

31. Neither the State of Texas nor the Texas Education Agency nor the United States of America provides funds to assist school districts with educating Plaintiffs or children similarly situated. This burden falls exclusively upon the local school district.

32. Some school districts are presently taxing at the maximum rate allowed by law and have no means to obtain more financial assistance.

33. Most of the children in the Plaintiffs' category do not pay any local school or state taxes or tuition and, therefore, their

education would be funded and paid for by the resident taxpayers of the State of Texas and the school district, including some of the adults the children live with in the school district.

34. The intrastate and interstate transfers would, in all probability, have a detrimental effect on the educational standards of the Defendant school districts and the other school districts in the State of Texas.

35. The children in this case live with persons who could, in the absence of notice to the contrary, consent to medical treatment for the minor. *See* Tex.Fam.Code Ann. § 35.01(2) (Vernon 1975).

36. The statutory definition contained in Section 21.031(d) was passed to give administrators a statutory guideline to follow in determining a genuine bona fide resident.

37. At least one of the legislative purposes behind Section 21.031(d) was to inhibit the migration of persons residing in Mexico to attend schools in the United States. (*See* Pl.Exh. 6).

38. Between August 1, 1977, and May 25, 1978, out of a total of fifty-six minor United States citizens living apart from their parents, legal guardian or other person having lawful control over them, who applied for admission to the McAllen Independent School District, fifty-one of these children were admitted.

39. In denying an earlier Motion for a Preliminary Injunction, then-presiding Judge Reynaldo Garza found that the Defendant school districts had been most liberal in finding that certain children, like the Plaintiffs, are not living away from their parents or residing in the school districts for the sole purpose of attending school. Judge Garza further found that analysis of the records submitted in this case conclusively showed that children living within the school districts with someone other than their parents or legal guardians will be admitted to school if any reason exists for such situation other than solely attending school. This Court has no reason to doubt the accuracy of these findings and they are adopted for purposes of this Opinion.

40. The parties have specifically limited this case to the issue of the facial constitutionality of Tex.Educ.Code Ann. § 21.031(d).

41. On October 26, 1979, it was agreed in open court that the Plaintiffs' Motion for a Preliminary Injunction would be consolidated into a final hearing on the merits. *See generally* Fed.R.Civ.P. 65(a)(2).

42. In the event that any of the foregoing findings of fact also constitute conclusions of law, they are adopted as such. In the event that any of the following conclusions of law also constitute findings of fact, they are adopted as such.

## CONCLUSIONS OF LAW

This case presents the very narrow issue of whether Tex.Educ.Code Ann. § 21.031(d) is unconstitutional on its face. Earlier in the case, Plaintiffs specifically requested and were granted permission to amend their complaint to eliminate any contention that the statute was unconstitutional as applied to them. The minor Plaintiffs are United States citizens residing within Texas and living apart from their parents, legal guardian or other person having lawful control over them. These children desire to attend public schools on a tuition-free basis. The Defendant school districts have refused to admit the children tuition-free, having determined that the Plaintiffs are living apart from their parents, legal guardian or other person having lawful control over them by court order for the primary purpose of attending the free public schools. *See* Tex.Educ.Code Ann. § 21.031(d) (Vernon Supp.1978).

This Court first notes that as a general rule the Constitution "does not invalidate state legislation because it fails to embody the highest wisdom or provide the best conceivable remedies." *Cohen v. Beneficial Industrial Loan Co.*, 337 U.S. 541, 550–51, 69 S.Ct. 1221, 1227–1228, 93 L.Ed. 1528, 1538 (1949). This Court's task is thus not to weigh a statute's effectiveness but its constitutionality. *James v. Strange*, 407 U.S. 128, 133, 92 S.Ct. 2027, 2030, 32 L.Ed.2d 600, 606 (1972) (rational basis test applied). Furthermore, the fact that an inequitable

result may be forthcoming does not render a statute unconstitutional. *See Wickard v. Filburn*, 317 U.S. 111, 129–30, 63 S.Ct. 82, 91, 87 L.Ed. 122, 137 (1942).

As Plaintiffs candidly recognize, any statute is the result of a legislative choice that inevitably affects one group differently from others and, therefore, gives rise to claims of unequal treatment. Whether such statute is unconstitutional under the equal protection clause is generally determined by the "rational basis test"; that is, the statute is entitled to a presumption of validity and will be upheld so long as it bears some rational relationship to the achievement of a legitimate purpose. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. at 1300, 1278, 36 L.Ed.2d 16 at 47 (1973). On the other hand, if a statute involves "suspect classifications" or if it interferes with a fundamental right explicitly or implicitly protected by the Constitution, then the statute must withstand "strict judicial scrutiny". It is not entitled to the usual presumption of validity, and the statute must fail unless it is necessary to promote a compelling state interest. *Id.* at 16–17, 93 S.Ct. 1287–88, 36 L.Ed.2d 32–33. Plaintiffs rightfully do not contend that the statute in question involves any suspect classifications, as it applies on its face to all students of whatever race, sex, or national origin.[1] Further, this statute involves secondary education and the Plaintiffs recognize that while education is unquestionably vital, the Supreme Court has held that it is not among the rights afforded explicit or implicit protection under the Constitution. *Id.*, at 35, 93 S.Ct. at 1297, 36 L.Ed.2d at 44. In an effort to bring this statute within the much stricter "compelling interest" test, Plaintiffs allege that the statute improperly burdens their fundamental constitutional right to

travel, and they thereby seek relief under the umbrella of such decisions as *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) and *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

*Shapiro, supra,* affirmed lower court decisions declaring unconstitutional those statutes denying welfare assistance to residents of a state who had not resided within their jurisdiction for at least one year immediately preceding the application for assistance. The Court found that the statutes penalized the exercising of a constitutional right to interstate travel and, therefore, failed because they were not necessary to promote a compelling state interest. *Memorial Hospital, supra,* announced a similar result with respect to a statute requiring a one-year's residence as a condition to receiving non-emergency hospital or medical care at county expense. There is a fundamental and critical difference, however, between the statutes involved in those cases and the statute before this Court. The Supreme Court has made it crystal clear that the defect in the *Shapiro* and *Memorial Hospital* statutes was *not* that they had residency requirements but that they had *durational* residency requirements.

In *Shapiro, supra,* the Court clearly noted that residency and one-year residency were two separate and distinct prerequisites for welfare assistance. 394 U.S. at 636, 89 S.Ct. at 1332, 22 L.Ed.2d at 616. Later, in *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), a case concerning a durational residency requirement for voting, the Court again applied the compelling interest rule. However, the Court made it clear that the challenge was not directed at the requirement of residency but rather at the requirement of durational

---

1. The United States Supreme Court has identified numerous suspect classifications. For example, racial classifications and classifications based on alienage are deemed suspect and subject to "strict scrutiny". *See Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race). Although sexual classifications were held to be suspect in one case, *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), recent cases evidence a retrenchment from this position and the application by the Supreme Court of an intermediate scrutiny. *See Orr v. Orr*, 440 U.S. 268, 278–79, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 318–19 (1979).

residency. "We emphasize again the difference between bona fide residence requirements and durational residence requirements." 405 U.S. at 343, 92 S.Ct. at 1003–1004, 31 L.Ed.2d at 284. This distinction was more clearly defined in *Memorial Hospital, supra,* where the Court reemphasized that the constitutional right to interstate travel did not mean merely the right to be in motion but rather the right to migrate, resettle, and start a new life. 415 U.S. at 255, 94 S.Ct. at 1080, 39 L.Ed.2d at 313. The Court concluded that while every bona fide residence requirement would necessarily burden a simple right to move from one location to another, it was only a durational residency requirement that impermissibly burdened the constitutional right "to migrate, 'with intent to settle and abide.'" *Id.* More recently, in *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam), the Court repeated that: "We have previously differentiated between a requirement of continuing residency and a requirement of prior residency of a given duration." 424 U.S. at 647, 96 S.Ct. at 1155, 47 L.Ed.2d at 369.

■ The Fifth Circuit Court of Appeals has also recognized this distinction in upholding an ordinance requiring all municipal employees to maintain their domicile and principal place of residence within the corporate limits of the city during the period of their employment. *Wright v. City of Jackson,* 506 F.2d 900 (5th Cir. 1975). Noting that there is no fundamental constitutional "right to commute", the Fifth Circuit

held that a bona fide continual residency requirement is not to be tested by the strict compelling purpose standard but rather by the traditional rational basis test. Similarly, in *Andre v. Board of Trustees of Village of Maywood,* 561 F.2d 48 (7th Cir. 1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978), the court noted:

All residency restrictions have an effect on the right to interstate travel, but only those residency restrictions which can be characterized as 'durational' have been found to unconstitutionally impinge or penalize the right to travel, in the absence of some compelling state interest. Durational residency requirements classify residents into groups of residents who have fulfilled the residency requirements and those who have not . . . Bona fide residency requirements as continuing conditions of municipal employment rest upon footings significantly different from those of durational residency requirements.

561 F.2d at 52.

In the instant case, the Texas statute only attempts to articulate a residency definition and in no way contains a durational residency requirement. The Court, therefore, concludes that the statute does not burden the constitutional right to travel and thus must be examined under the rational basis test.[2] Before analyzing whether or not the statute can pass this test, however, the Court will next consider Plaintiffs' second basic point of attack.

■ Plaintiffs contend that the statute violates both the due process and equal

---

2. Even if a durational residency requirement were involved in this case, it would not automatically be considered an unconstitutional penalty on the right to interstate travel. In *Shapiro, supra,* the Court expressly reserved decision as to whether a durational residency requirement for "tuition-free education" would be unconstitutional. 394 U.S. at 638 fn. 21, 89 S.Ct. at 1333,, f. 21, 22 L.Ed.2d at 617. In *Memorial Hospital, supra,* the Court reiterated that, depending upon what right is affected, some waiting periods may not be penalties. 415 U.S. at 258–59, 94 S.Ct. at 1082, 39 L.Ed.2d at 314. In *Vlandis v. Kline,* 412 U.S. 441, 452–53, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), the Court specifically declined to hold that a state

could not impose a "reasonable durational residency requirement" as one element in demonstrating bona fide residence for purposes of lower tuition and fees. In *Starns v. Malkerson,* 326 F.Supp. 234 (D.Minn.1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the district court upheld a university regulation providing that no student could qualify as a resident for tuition purposes unless he had been a bona fide domiciliary of the State for at least one year, and this decision was affirmed by the Supreme Court. In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court upheld a one-year durational residency requirement for obtaining a divorce.

protection clauses of the fourteenth amendment because its definition of residency creates "an invalid irrebuttable presumption of non-residency".[3] This contention is essentially grounded on two key cases, *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) and *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In *Carrington,* the Court was concerned with the provision of the Texas Constitution that prohibited any member of the armed forces of the United States who moved his home to Texas during the course of his military duty from ever voting in a Texas election "so long as he or she is a member of the Armed Forces". The Court held that this provision violated the equal protection clause of the fourteenth amendment. In that case, however, it was undisputed that the petitioner had been domiciled in Texas and that "he intend[ed] to make his home there permanently". 380 U.S. at 91, 85 S.Ct. at 777, 13 L.Ed.2d at 677. The Court stressed that Texas had the right to require all military persons to be bona fide residents of the community before they were entitled to vote but concluded that if the military personnel were "in fact residents, with the intention of making Texas their home indefinitely", then they had the right to be treated the same as other Texas residents. *Id.* at 93–94, 85 S.Ct. at 779, 13 L.Ed.2d at 678.

In *Vlandis,* the Court considered a Connecticut statute which attempted to define residents and non-residents for purpose of paying higher tuition at state universities. Under the statutory scheme, once a student was classified as a "non-resident", his status was permanent and irrebuttable during the entire time that he remained at the university, regardless of the particular fact situation of any given student. The Court held that this statute was a violation of the constitutional right to due process. In so doing, however, the Court was careful to observe that it was not questioning the segregation of students into resident and non-resident categories nor the charging of higher fees to the latter group. The nar-

row holding in *Vlandis,* therefore, was simply that a permanent irrebuttable presumption of non-residence violated the due process clause.

The Court cannot agree that the statute involved here creates an irrebuttable presumption of the type condemned by *Vlandis.* The challenged portion of the statute provides, in essence, that if a student under the age of eighteen years is living apart from his parent, guardian, or other person having lawful control of him under court order, then in order to establish residency for purposes of attending free public schools, that student must establish that his presence in the school district is "not for the primary purpose of attending the public free schools". Thus, unlike statutes which set forth objective criteria for residency such as length of time or a negative category (such as "member of the Armed Forces"), this statute codifies the ultimate universal test of residency, namely subjective intent. Of course, there is a certain superficial logic to the argument that the statutory definition is "irrebuttable" because as long as the minor student admits that he is living apart from his parent or guardian for the sole purpose of attending free public schools in a particular district, then he can never be classified as a resident. On the other hand, however, by using the definition of residency almost universally accepted in school cases, the statutory criteria in one sense merely states a truism, namely that a person who only intends to remain in a given place temporarily in order to take advantage of a particular benefit at that location necessarily lacks the permanence to be classified as a resident.

Thus, in *Vlandis, supra,* the Supreme Court said:

> The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, *but who have come there solely for educational purposes,* cannot take advantage of the in-state rates. 412 U.S. at 453–54, 93 S.Ct. at 2237 (emphasis supplied).

---

3. Plaintiffs' First Amended Complaint, ' 21b.

In *Spriggs v. Altheimer, Arkansas School District Number Twenty-Two,* 385 F.2d 254 (8th Cir. 1967), the minor school children had been charged tuition because they were living with their grandfather rather than with their mother who lived in another school district. The Eighth Circuit remanded the case to the district court to make a factual determination as to the residency of the children for purposes of the Arkansas statute, which provided free public schools to all persons "residing" in the district. The trial court was instructed to hear further evidence on the question but the following guideline was given:

> On the other hand, if the residency of the children with their grandfather is only temporary for the primary purpose of attending school in a district other than where their parents reside, then tuition under the statutes would be proper. 385 F.2d at 259.

In *Clarke v. Redeker,* 259 F.Supp. 117 (S.D. Iowa 1966) (three judge court), regulations classifying residents and non-residents for tuition purposes at the State University of Iowa were upheld as being constitutionally valid on their face. Among other things, these regulations defined a bona fide resident to mean a student who is "not in the state primarily to attend a college". 259 F.Supp. at 121. In *Kelm v. Carson,* 473 F.2d 1267 (6th Cir. 1973), the Court noted that where a statute and regulation "seek to distinguish between temporary sojourners in Ohio who reside there only for school purposes and Ohio residents, the intention of the party and what he has done to evidence that intent becomes critical." *Id.* at 1271. Presence in a school district for the primary purpose of attending school was also held insufficient "residency" for tuition purposes in *Mansfield Township Board of Education v. State Board of Education,* 101 N.J.L. 474, 129 A. 765 (Sup.Ct. 1925) and *Mt. Hope School Dist. v. Hendrickson,* 197 Iowa 191, 197 N.W. 47 (1924).

In the instant case, Plaintiffs attack the statute only on its face but it is interesting to note that at least as applied within the Defendant school districts, the statute can hardly be called irrebuttable in actual prac-

tice. Indeed, the stipulated evidence clearly shows that between approximately August 1, 1977, and May 25, 1978, the McAllen Independent School District had only 56 applications from students who were United States citizens and covered by § 21.-031(d) and, of that number, all but five were enrolled in school. *See* Finding of Fact No. 38. The evidence indicated that students living apart from their parent or guardian because of physical health or emotional well-being, broken homes, health reasons, etc., are all allowed to qualify for free public schools. Thus, if the statute in question contains even an indirect presumption of non-residency, certainly the presumption is rebuttable in practice. *See Michelson v. Cox,* 476 F.Supp. 1315 (S.D.Iowa 1979). Even if a child were to originally move into the school district for the primary purpose of attending school, there is nothing on the face of the statute nor apparently in actual practice, to prohibit the child from being reclassified as a resident if in fact his circumstances—specifically his primary motive for being in the district—would change from one school semester to another. In summary, therefore, the only students to whom the statutory definition of non-residency is in any sense irrebuttable are those students who persist in declaring that their primary purpose for being present in the school district is to attend the public free schools. Because such a declaration would ipso facto place the student within the classic legal definition of a non-resident, the Court concludes that it does no violence to the Constitution.

■ Plaintiffs further suggest, however, that the statute is discriminatory because only one category of students must defend its motives. In other words, a literal reading of Section 21.031(d), reflects that if a student under the age of eighteen years is living with his parents, legal guardian, or some person having lawful control of him under court order, then that student's purpose for being in the school district is unquestioned. It is only when a person under the age of eighteen years is living apart from a parent or guardian or other person

having lawful control that he must establish the proper motive for being in the district. In resolving this contention, it is again necessary to recall the Court's earlier conclusion that this statute must only pass the rational basis test.

As stated in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 37 S.Ct. [337], 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theater Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. [441], 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. [1101], 1105, 6 L.Ed.2d 393.

397 U.S. at 485, 90 S.Ct. at 1161, 6 L.Ed.2d at 433.

The Court concludes that in the present statutory scheme, there is some reasonable basis for separately classifying minor school children living apart from their parents, guardian or other person having custody under court order. Section 21.031(d) attempts to define "residence" for this one class of students. The word "residence"

has many meanings in the law, largely determined by the statutory context in which it is used. *Kelm v. Carlson,* 473 F.2d 1267, 1271 (6th Cir. 1973). Within the context of § 21.031(d), residence means something more than mere physical presence and thus is more closely related to the concept of domicile. *See DeLeon v. Harlingen Consolidated Independent School District,* 552 S.W.2d 922, 924 (Tex.Civ.App.—Corpus Christi 1977, no writ). The cases discussing the domicile of a minor are, therefore, extremely helpful in evaluating the reasonableness of this legislative classification. Under Texas common law, a minor is "not sui juris, and can neither select nor change its domicile, which is fixed by law as that of his father." *Smith v. Ansley,* 257 S.W.2d 156, 157 (Tex.Civ.App.—Waco 1953, writ ref'd n. r. e.); *see Bradshaw v. Peacock,* 145 Tex. 68, 194 S.W.2d 551, 554 (1946); *Mills v. Howard,* 228 S.W.2d 906, 907 (Tex.Civ.App. —Amarillo 1950, no writ); *see generally* Restatement of Conflicts of Law § 11 (1934). This notion rests in large measure upon the minor's presumed lack of capacity to form the requisite intention necessary to establish a separate domicile. *Deterly v. Wells,* 53 S.W.2d 847, 848 (Tex.Civ.App.— Dallas 1932, writ refused). Indeed, the common law presumption is so strong that even when a child is abandoned by both parents, he still cannot acquire his own domicile. *See generally* Restatement of Conflicts of Law § 34 (1934) (where a child is abandoned by both parents it takes its father's domicile at the time of the abandonment). Since the child's ability in Texas to acquire his own separate residence is a matter of legislative grace [4], it is certainly not unreasonable to require that his presence in another school district be for some cogent reason other than attending free

---

4. In the relatively new Texas Family Code, the Texas Legislature both codified and modified the common law in certain respects. For example, like the common law, a child's domicile is expressly defined as that of his parent. Texas Fam.Code Ann. § 12.04 (Vernon Supp.1978). Likewise, if a managing conservator is appointed, his domicile establishes that of the child. *Id.* § 14.02. On the other hand, for venue purposes, while a child is deemed to reside with its parents, guardian, manager conservator or

other in lawful control, if it is found that the child is not under the care and control of any adult, then he resides where he is found. *Id.* § 11.04(c)(6). Thus "residence" is defined differently for venue purposes than for tuition-free purposes but these classifications are more properly left to the Legislature, and the courts will not interfere with its judgment unless the classification is patently unreasonable. *See* P. 221 *supra.*

public school in that district before qualifying for tuition-free status. *See DeLeon v. Harlingen Consolidated Independent School District, supra,* at 924.

■■■ Having concluded that Section 21.-031(d) does not create an invalid irrebuttable presumption against residency and having further concluded that there is some rational basis for defining the residency of minors living apart from a parent or guardian or other person in lawful control under court order, the only remaining question would be whether there is a rational basis for the statutory scheme which denies free public education to those who cannot meet the statutory definition of residency. Actually, Plaintiffs do not seriously challenge this aspect of the statute. A state has a legitimate interest in protecting and preserving the quality of its educational system and the right of its own bona fide residents to attend state schools on a preferred tuition basis. *Vlandis v. Kline, supra,* at 452–53, 93 S.Ct. 2236. Similarly, the state would have an interest in preserving the financial integrity of the various components of the state educational system, *i. e.,* the individual school districts. *East Texas Guidance and Achievement Center, Inc. v. Brockette,* 431 F.Supp. 231, 236 (E.D.Tex. 1977). It must also be remembered that although the Plaintiffs in this case have concentrated their focus on children of United States citizens residing in Mexico, nevertheless the statute on its face would also apply to children of parents living anywhere in Texas or in any of the United States. Since the statute applies to any minor student living apart from his parents, guardian or other person with lawful control, it even applies to attempted transfers between different school districts within the same county.[5] The Court is satisfied

that these kinds of transfers, free of all tuition, would cause budgetary and administrative planning problems sufficient to justify the tuition scheme of the statute. As stated in *DeLeon v. Harlingen Consolidated Independent School District, supra*:

> The variability of student population is a serious impediment to the effective planning of virtually all phases of the educational process. There is no justification for a requirement that a school system educate in tuition-free manner those children whose only indicia of residence is mere presence within the district, accompanied by the student's desire (or that of his parents) to attend school therein. It is reasonable to draw the line of residency, at least for school admission purposes, between those who come within a school district because they had to move into the district for some valid reason other than for educational purposes, and those who have come there for the sole purpose of getting tuition-free education within the district. There is no reason to add to the burdens of a school district by freely admitting to its schools anyone who has previously resided outside the district simply because they wanted to attend the schools in the district.

552 S.W.2d at 925.

In conclusion, the Court finds that Section 21.031(d) is a constitutional enactment of the Texas Legislature, in that it violates neither the equal protection clause nor the due process clause of the fourteenth amendment. This does not mean that the statute is perfect or that the Legislature could not have found a more precise or more equitable way to draw lines between resident and non-resident students. The Court simply concludes that the statute as drawn is not unconstitutional. Accordingly, final judgment will be entered for Defendants.

5. Since the statute is being attacked on its face, the fact that the statute facially applies to intra-state as well as inter-state movement, and indeed even to international movement, poses an additional barrier to Plaintiffs. Courts are reluctant to strike down a statute which can validly be applied to a number of situations. *Arbeitman v. District Court,* 522 F.2d 1031, 1034 (2d Cir. 1975). There is some question as to the existence of a constitutional right to intra-state travel and certainly as to whether infringement of such a right would have to pass the "compelling interest" test. *Wright v. City of Jackson,* 506 F.2d at 902; *Wardwell v. Board of Education,* 529 F.2d 625, 627 (6th Cir. 1976); *Brown v. New Haven Civil Service Board,* 474 F.Supp. 1256, 1264 (D.Conn.1979). With respect to international travel, see *Califano v. Aznavorian,* 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978).