Maria ARREDONDO, et al.,
Plaintiffs-Appellants,

v.

M. L. BROCKETTE, et al.,
Defendants-Appellees.

No. 80–1031.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 19, 1981.

A.M.C. 520 (1st Cir. 1978).

Edward J. Tuddenham, Texas Rural Legal Aid, Inc., Hereford, Tex., for plaintiffs-appellants.

Fortunato P. Benavides, McAllen, Tex., for Pharr-San Juan-Alamo Independent School Dist.

Gregory Wilson, Asst. Atty. Gen., Austin, Tex., Travis Hiester, Mario E. Ramirez, Jr., McAllen, Tex., for defendants-appellees.

Before BROWN, GEWIN * and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

The sole issue in this case is the constitutionality *vel non* of Tex.Educ.Code Ann. tit. 2, § 21.031(d) (Vernon Supp. 1978), which provides:

> In order for a person under the age of 18 years to establish a residence for the purpose of attending the public free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is *not for the primary purpose of attending the public free schools.* The board of trustees shall be responsible for determining whether an applicant for admission is a resident of the school district for purposes of attending the public schools. (Emphasis added.)

Appellants are United States citizens between five and eighteen years of age, not living with their parents or legal guardians, who have chosen to live in a school district for the primary purpose of attending its free public schools. They were denied tuition-free admission to the public schools because of the strictures of the challenged statute. The district court, 482 F.Supp. 212, upheld the statute. We affirm.

The original complaint was filed as a class action, but this aspect was eliminated by an amended complaint. Only two of the original plaintiffs remain, Roberto Morales and Rita Gomez.[1] It is contended that § 21.031(d) of the Texas Education Code violates the due process and equal protection clauses of the fourteenth amendment of the Constitution.

Appellants argue that the challenged statute, as applied, results in invidious discrimination against Mexican-Americans, violating their right to equal protection. The Supreme Court has found classifications based on race or alienage inherently suspect and subject to close judicial scrutiny. *Graham v. Richardson,* 403 U.S. 365,

---

* Due to his death on May 15, 1981, Judge Gewin did not participate in this decision. The case is being decided by a quorum, 28 U.S.C. § 46(d).

1. The other plaintiffs are no longer parties to the litigation for various reasons, they withdrew from the school district, were subsequently admitted into the public schools, or presented no evidence in support of their claim.

371–72, 91 S.Ct. 1848, 1851–1852, 29 L.Ed.2d 534 (1971). Were this statute to be so classified, it would be subjected to strict judicial scrutiny and would not be upheld unless a compelling state interest were shown. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). We do not address this question because discriminatory application is not alleged in the amended complaint. The issue may not be revived on appeal.

Appellants assert a second ground for application of the compelling interest test—the statute improperly burdens the fundamental right of interstate travel. Strict judicial scrutiny is also appropriate in those situations in which a constitutionally protected right is infringed. *San Antonio School District v. Rodriguez*, 411 U.S. at 40, 93 S.Ct. at 1300. Although not explicitly mentioned in the Constitution, the right to interstate travel has been repeatedly recognized as a basic right, fundamental to the concept of our federal union. *United States v. Guest*, 383 U.S. 745, 757–58, 86 S.Ct. 1170, 1177–1178, 16 L.Ed.2d 239 (1966). We recognize that the statutory definition of residency in § 21.031(d) denies tuition-free admission to public school to those whose presence in the school district is primarily for that purpose. All residency requirements, however, are not unconstitutional. The Supreme Court has distinguished between residency requirements and *durational* residency requirements, finding only the latter violative of the right to travel. *See McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). Based on this distinction, the district court declined to apply the strict scrutiny standard, requiring instead that the statute be supported by minimum rationality and, on that basis, found the statute constitutional.

We agree in principle with the district court's analysis of the right to interstate travel. Nevertheless, we defer the determination whether the strict scrutiny or rational basis yardstick should be applied for under either measure Texas' interests in enacting the statute are sufficient. We

need not decide whether in another instance involving a similar statute a legitimate state interest alone would suffice. We are in accord with the district court's articulation of the state's interests, expressed as follows:

"A state has a legitimate interest in protecting and preserving the quality of its educational system and the right of its own bona fide residents to attend state schools on a preferred tuition basis. *Vlandis v. Kline*, [412 U.S. 441, 452–53, 93 S.Ct. 2230, 2236–2237, 37 L.Ed.2d 63 (1973)]. Similarly, the state would have an interest in preserving the financial integrity of the various components of the state educational system, *i. e.*, the individual school districts. *East Texas Guidance and Achievement Center, Inc. v. Brockette*, 431 F.Supp. 231, 236 (E.D.Tex.1977).... [T]he statute on its face [applies] to children of parents living anywhere in Texas or in any of the United States. Since the statute applies to any minor student living apart from his parents, guardian or other person with lawful control, it even applies to attempted transfers between different school districts within the same county. The Court is satisfied that these kinds of transfers, free of all tuition, would cause budgetary and administrative planning problems sufficient to justify the tuition scheme of the statute. As stated in *DeLeon v. Harlingen Consolidated Independent School District*, [552 S.W.2d 922 (Tex.Civ.App.—Corpus Christi 1977, no writ)]:

'The variability of student population is a serious impediment to the effective planning of virtually all phases of the educational process. There is no justification for a requirement that a school system educate in tuition-free manner those children whose only indicia of residence is mere presence within the district, accompanied by the student's desire (or that of his parents) to attend school therein. It is reasonable to draw the line of residency, at least for school admission purposes, between those who come within a school district because they had to move into the district for some valid reason other than

for educational purposes, and those who have come there for the sole purpose of getting tuition-free education within the district. There is no reason to add to the burdens of a school district by freely admitting to its schools anyone who has previously resided outside the district simply because they wanted to attend the schools in the district.' 552 S.W.2d at 925."

[Footnotes omitted.]

Appellants argue that regardless of the level of judicial scrutiny, the statute at issue creates an irrebuttable presumption of non-residency and, therefore, violates the due process clause of the fourth amendment. Section 21.031(d) allows a person under 18 to establish a residence separate from his parents or legal guardian, for the purpose of attending school in the district in which his separate residence is located, but only if the minor's residence is not established in that school district for the primary purpose of attending its free public school. Appellants insist that through its definition of residency the statute establishes an irrebuttable presumption that a person living in a school district for the primary purpose of attending its school is a non-resident. We are impressed by the well-reasoned and thorough analysis and discussion of the district judge and adopt his response to this contention as our own:

"This contention is essentially grounded on two key cases, *Carrington v. Rash*, 380 U.S. 89 [85 S.Ct. 775, 13 L.Ed.2d 675] (1965) and *Vlandis v. Kline*, 412 U.S. 441 [93 S.Ct. 2230, 37 L.Ed.2d 63] (1973). In *Carrington*, the Court was concerned with the provision of the Texas Constitution that prohibited any member of the armed forces of the United States who moved his home to Texas during the course of his military duty from ever voting in a Texas election so long as he or she is a member of the Armed Forces. The Court held that this provision violated the equal protection clause of the Fourteenth Amendment. In that case, however, it was undisputed that the petitioner had been domiciled in Texas and that he 'intend[ed] to make his home there permanently.' 380 U.S. at 91 [85 S.Ct. at 777]. The Court stressed that Texas had the right to require all military persons to be bona fide residents of the community before they were entitled to vote but concluded that if the military personnel were 'in fact residents, with the intention of making Texas their home indefinitely', then they had the right to be treated the same as other Texas residents. *Id.* at 93–94 [85 S.Ct. at 778–779].

"In *Vlandis*, the Court considered a Connecticut statute which attempted to define residents and non-residents for purpose of paying higher tuition at state universities. Under the statutory scheme, once a student was classified as a 'non-resident', his status was permanent and irrebuttable during the entire time that he remained at the university, regardless of the particular fact situation of any given student. The Court held that this statute was a violation of the constitutional right to due process. In so doing, however, the Court was careful to observe that it was not questioning the segregation of students into resident and non-resident categories nor the charging of higher fees to the latter group. The narrow holding in *Vlandis*, therefore, was simply that a permanent irrebuttable presumption of non-residence violated the due process clause.

"The Court cannot agree that the statute involved here creates an irrebuttable presumption of the type condemned by *Vlandis*. The challenged portion of the statute provides, in essence, that if a student under the age of eighteen years is living apart from his parent, guardian, or other person having lawful control of him under court order, then in order to establish residency for purposes of attending free public schools, that student must establish that his presence in the school district is 'not for the primary purpose of attending the public free schools'. Thus, unlike statutes which set forth objective criteria for residency such as length of time or a negative category (such as 'member of the Armed Forces'), this statute codifies the ultimate universal test of residency, namely

subjective intent. Of course, there is a certain superficial logic to the argument that the statutory definition is 'irrebuttable' because as long as the minor student admits that he is living apart from his parent or guardian for the sole purpose of attending free public schools in a particular district, then he can never be classified as a resident. On the other hand, however, by using the definition of residency almost universally accepted in school cases, the statutory criteria in one sense merely states a truism, namely that a person who only intends to remain in a given place temporarily in order to take advantage of a particular benefit at that location necessarily lacks the permanence to be classified as a resident.

"Thus, in *Vlandis, supra*, the Supreme Court said:

'The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, *but who have come there solely for educational purposes*, cannot take advantage of the in-state rates.' 412 U.S. at 453–4 [93 S.Ct. at 2237] (emphasis supplied).

In *Spriggs v. Altheimer, Arkansas School District Number Twenty-Two*, 385 F.2d 254 (8th Cir. 1967), the minor school children had been charged tuition because they were living with their grandfather rather than with their mother who lived in another school district. The Eighth Circuit remanded the case to the district court to make a factual determination as to the residency of the children for purposes of the Arkansas statute which provided free public schools to all persons 'residing' in the district. The trial court was instructed to hear further evidence on the question but the following guideline was given:

'On the other hand, if the residency of the children with their grandfather is only temporary for the primary purpose of attending school in a district other than where their parents reside, then tuition under the statutes would be proper.' 385 F.2d at 259.

In *Clarke v. Redeker*, 259 F.Supp. 117 (S.D. Iowa 1966) (three judge court), regulations classifying residents and non-residents for tuition purposes at the State University of Iowa were upheld as being constitutionally valid on their face. Among other things, these regulations defined a bona fide resident to mean a student who is 'not in the state primarily to attend a college'. 259 F.Supp. at 121. In *Kelm v. Carlson*, 473 F.2d 1267 (6th Cir. 1973), the Court noted that where a statute and regulation 'seek to distinguish between temporary sojourners in Ohio who reside there only for school purposes and Ohio residents, the intention of the party and what he has done to evidence that intent becomes critical.' *Id.*, at 1271. Presence in a school district for the primary purpose of attending school was also held insufficient 'residency' for tuition purposes in *Mansfield Township Board of Education v. State Board of Education* [101 N.J.L. 474], 129 A. 765 (N.J.Sup.Ct.1925) and *Mt. Hope School Dist. v. Hendrickson* [197 Iowa 191], 197 N.W. 47 (Iowa Sup.Ct. 1924).

"In the instant case, Plaintiffs attack the statute only on its face but it is interesting to note that at least as applied within the Defendant school districts, the statute can hardly be called irrebuttable in actual practice. Indeed, the stipulated evidence clearly shows that between approximately August 1, 1977, and May 25, 1978, the McAllen Independent School District had only 56 applications from students who were United States citizens and covered by § 21.-031(d) and, of that number, all but five were enrolled in school. *See* Finding of Fact No. 38. The evidence indicated that students living apart from their parent or guardian because of physical health or emotional well-being, broken homes, health reasons, etc., are all allowed to qualify for free public schools. Thus, if the statute in question contains even an indirect presumption of non-residency, certainly the presumption is rebuttable in practice. *See Michelson v. Cox*, 476 F.Supp. 1315 (S.D.Iowa 1979). Even if a child were to originally move into the school district for the primary purpose of attending school, there is nothing on the

face of the statute nor apparently in actual practice, to prohibit the child from being reclassified as a resident if in fact his circumstances—specifically his primary motive for being in the district—would change from one school semester to another. In summary, therefore, the only students to whom the statutory definition of non-residency is in any sense irrebuttable are those students who persist in declaring that their primary purpose for being present in the school district is to attend the public free schools. Because such a declaration would ipso facto place the student within the classic legal definition of a non-resident, the Court concludes that it does no violence to the Constitution.

 "Plaintiffs further suggest, however, that the statute is discriminatory because only one category of students must defend its motives. In other words, a literal reading of Section 21.031(d), reflects that if a student under the age of eighteen years is living with his parents, legal guardian, or some person having lawful control of him under court order, then that student's purpose for being in the school district is unquestioned. It is only when a person under the age of eighteen years is living apart from a parent or guardian or other person having lawful control that he must establish the proper motive for being in the district. In resolving this contention, it is again necessary to recall the Court's earlier conclusion that this statute must only pass the rational basis test.

"As stated in *Dandridge v. Williams*, 397 U.S. 471 [90 S.Ct. 1153, 25 L.Ed.2d 491] (1970):

'In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis", it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of

government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].' 397 U.S. at 485 [90 S.Ct. at 1161].

The Court concludes that in the present statutory scheme, there is some reasonable basis for separately classifying minor school children living apart from their parents, guardian or other person having custody under court order. Section 21.031(d) attempts to define 'residence' for this one class of students. The word 'residence' has many meanings in the law, largely determined by the statutory context in which it is used. *Kelm v. Carlson*, 473 F.2d 1267, 1271 (6th Cir. 1973). Within the context of § 21.031(d), residence means something more than mere physical presence and thus is more closely related to the concept of domicile. *See DeLeon v. Harlingen Consolidated Independent School District*, 552 S.W.2d 922, 924 (Tex.Civ.App.—Corpus Christi 1977, no writ). The cases discussing the domicile of a minor are, therefore, extremely helpful in evaluating the reasonableness of this legislative classification. Under Texas common law, a minor is 'not sui juris, and can neither select nor change its domicile, which is fixed by law as that of its father.' *Smith v. Ansley*, 257 S.W.2d 156, 157 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.); *see Bradshaw v. Peacock* [145 Tex. 68], 194 S.W.2d 551, 554 (Tex.Sup.Ct. 1946); *Mills v. Howard,* 228 S.W.2d 906, 907 (Tex.Civ.App.—Amarillo 1950, no writ); *see generally*, Restatement of Conflicts of Law § 11 (1934). This notion rests in large measure upon the minor's presumed lack of capacity to form the requisite intention necessary to establish a separate domicile. *Deterly v. Wells*, 53 S.W.2d 847, 848 (Tex.Civ. App.—Dallas 1932, writ ref'd). Indeed, the common law presumption is so strong that even when a child is abandoned by both

parents, he still cannot acquire his own domicile. *See generally* Restatement of Conflicts of Law § 34 (1934) (where a child is abandoned by both parents it takes its father's domicile at the time of the abandonment). Since the child's ability in Texas to acquire his own separate residence is a matter of legislative grace, it is certainly not unreasonable to require that his presence in another school district be for some cogent reason other than attending free public school in that district before qualifying for tuition-free status. *See DeLeon v. Harlingen Consolidated Independent School District, supra,* at 924." [Footnotes omitted.]

 We hold that § 21.031(d) is a constitutional enactment of the Texas state legislature. The decision of the district court is

AFFIRMED.