Honorable Wilhelmina Delco Chairman Higher Education Committee Texas House of Representatives P.O. Box 2910 Austin, Texas 78769
Re: Whether foreign nationals may be constitutionally charged a higher rate of tuition at a state university than other nonresidents
Dear Representative Delco:
You have requested an opinion from this office regarding the constitutionality of different rates of tuition at Texas public institutions of higher education based on national origin. Your concern is whether the state may constitutionally charge a rate of tuition at such institutions to one class of students who are not Texas residents while charging a higher rate of tuition to another class of students, who also are not Texas residents, simply because the latter class is composed of foreign nationals and the former class is composed of United States citizens. You have not submitted a specific proposal or draft, and thus, we will discuss the question in the abstract.
The Education Code provides different rates of tuition for students who are residents of Texas and for students who are not residents of Texas. Our discussion is limited to students who do not qualify for the Texas resident tuition. Presently, the Education Code provides that tuition for students who are citizens of any country other than the United States is the same as tuition required of other nonresidents of Texas who are citizens of the United States. See Educ. Code § 54.051, subsecs. (b), (c), (h), (i).
The Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. The amendment speaks of "persons" rather than "citizens." It has long been settled that the guarantee of equal protection extends to all persons within the territorial jurisdiction of a state irrespective of citizenship. See Ambach v. Norwick, 441 U.S. 68
(1979); Yick Wo v. Hopkins, Sheriff, 118 U.S. 356 (1886). An alien who is present within the boundaries of the state is a person within the jurisdiction of the state. See Plyler v. Doe,457 U.S. 202 (1982); reh'g denied, 458 U.S. 1131 (1982).
The equal protection clause does not prohibit all legislative classifications. In reviewing legislation under the equal protection clause, the Court's usual approach has been a two-tiered standard. If a statute infringes on a fundamental right or creates an inherently suspect classification, the statute is subject to strict judicial scrutiny which requires the state to establish a compelling interest in its enactment. To do so, the state must demonstrate that its purpose or interest is both constitutionally permissible and substantial and that its use of the classification is necessary to accomplish its purpose. See In re Griffiths, 413 U.S. 717 (1973). If a statute does not affect a fundamental right or create a suspect classification, the statute is accorded a presumption of constitutionality that is not disturbed unless the enactment rests on grounds wholly irrelevant to the achievement of a legitimate state objective. The latter standard frequently is referred to as the rational basis test. See McGowan v. Maryland, 366 U.S. 420 (1961). A person challenging a classification judged by the rational basis test must establish that the classification does not bear a fair relationship to a legitimate public purpose, whereas a state must justify a suspect classification by showing a compelling state interest. See Plyler v. Doe, supra.
The United States Supreme Court has found classification based on race or alienage inherently suspect and subject to strict judicial scrutiny. See In re Griffiths, supra; Sugarman v. Dougall, 413 U.S. 634 (1973); Graham v. Richardson, 403 U.S. 365
(1971); Arrendondo v. Brockette, 648 F.2d 425 (5th Cir. 1981). We do not believe that your question requires a determination of the appropriate standard by which the courts would test the constitutionality of the tuition rates that you describe. It is our opinion that the rates in question would not pass either test. The constitutionality under the equal protection clause of each statute is judged on its individual provisions and facts, but we are not aware of Texas interests which we believe the courts would find to be a rational justification for enacting higher tuition rates for foreign nationals than for United States citizens, neither of which qualify for Texas resident tuition. Cf. Plyler v. Doe, supra.
It is our judgment that, in the absence of a rational basis for such a distinction, a court would hold that discrimination against one group solely because it is composed of aliens would be arbitrary and unreasonable. In 1982, the office of the Attorney General of Tennessee was asked whether it is constitutional to assess different fees for public colleges based on a student's national origin. The Attorney General of Tennessee determined that such aliens would be considered by the courts to be a suspect class under the equal protection clause. See Attorney General of Tenn. Opinion No. 82-194 (1982). The opinion states that
 When a suspect class is involved, the classification is `inherently suspect and subject to close judicial scrutiny.' Graham v. Richardson, supra, 403 U.S. at 372. As a general proposition, this office is not aware of any circumstances which would compel the state to set a different fee rate for alien students than for other out-of-state students. In the absence of such a compelling purpose, the Fourteenth Amendment would be contravened.
This office, too, has stated that restrictions based on alienage cannot be upheld unless the state can prove that the restriction is necessary to accomplish a compelling state purpose. Attorney General Opinion H-1140 (1978) (unconstitutional to restrict license as Private Employment Agency operator to citizens of the U.S.).
In addition to the Fourteenth Amendment of the United States Constitution, the Constitution of Texas guarantees equality of rights to all persons. See Tex. Const. art. I, § 3. Article I, section 3a specifically declares that equality under the law may not be denied or abridged because of sex, race, color, creed, or national origin.
Your inquiry raises other issues in addition to the issue of equal protection. For instance, no state may conduct an independent foreign policy. It has long been settled that the United States is a single nation for purposes of foreign affairs. See Chae Chan Ping v. U.S., 130 U.S. 581 (1889). The power to deal with foreign nations rests in the president, who conducts our foreign relations through the State Department, ambassadors and consuls, and others whom he appoints. U.S. v. Hooker,607 F.2d 286, 289 (9th Cir. 1979), cert. denied, 445 U.S. 905 (1980). We do not believe that the courts would allow a state statute to subtly affect international relations or national foreign policy. See Zschernig v. Miller, 389 U.S. 429 (1968). Congress has the exclusive power to control immigration and the admission of aliens to the United States, and a state may not impose immigration controls on aliens that the federal government has chosen to admit. In Attorney General Opinion H-157 (1973), this office said that
 The power to control immigration is vested solely in Congress. Fong Yue Ting v. U.S., 149 U.S. 698, 713 (1893). The statutory scheme enacted by Congress is pervasive, and a state may not enact statutes or regulations which curtail, interfere with or conflict with the comprehensive Congressional program. Hines v. Davidowitz, 312 U.S. 52 (1941).
A state may, in appropriate circumstances, limit the participation of noncitizens in the state's political and governmental functions. See Toll v. Moreno, 458 U.S. 1, Footnote 17 (1982), and cases cited therein. It is our opinion, however, that if challenged, a state law which charges a higher rate of tuition at state universities to foreign nationals than the rate charged other nonresidents of Texas would not be upheld by the courts.
 SUMMARY
A state law which charges a higher rate of tuition at state institutions of higher education to foreign nationals than the rate charged other nonresidents of Texas would raise serious constitutional issues, such as the issue of equal protection under the Fourteenth Amendment to the United States Constitution and under the Texas Constitution and interference with the federal government's exclusive right to control foreign policy and the immigration and admission of aliens to the United States.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Nancy Sutton Assistant Attorney General