**D.R., et al., minor children of Korynda K. Reed, deceased, by and through Jollie Mae IGLES, their Personal Representative, and Jollie Mae Igles, as Administrator of the Estate of Korynda Reed, Plaintiffs,**

v.

**Charles G. GRANT and Laquient MacKlin, Defendants.**

Case No. 1:10–CV–24 (WLS).

United States District Court, M.D. Georgia, Albany Division.

March 21, 2011.

Charles A. Mathis, Jr., John D. Steel, Atlanta, GA, Chevene Bowers King, Jr., Albany, GA, for Plaintiffs.

Edward Donald Tolley, Athens, GA, Robert Patrick White, Casey Gilson P.C., Atlanta, GA, William Sims Stone, Blakely, GA, for Defendants.

SANDS, District Judge.

Before the Court is Defendants' Motion to Hear and Determine Their First Defense—Lack of Subject Matter Jurisdiction. (Doc. 21). For the following reasons, Defendants' Motion to Hear and Determine Their First Defense—Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED,** and the above-captioned case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[1]

### *RELEVANT BACKGROUND*

The events underlying the above-captioned action occurred in the early morning hours of February 3, 2008, when a stray bullet fatally struck the head of Ms. Korynda K. Reed while street fights raged outside Pokey's bar on Church Street in Blakely, Early County, Georgia. (Doc. 1 at ¶¶ 4, 23–41). The street fights are alleged to have been instigated by Defendant CHARLES G. GRANT, who at the time was a professional football player for the New Orleans Saints of the National Football League. (*Id.* at ¶¶ 14, 28, 32).

---

1. *See* O.C.G.A. § 9–2–61(c) (providing for renewal of a case in the Georgia courts "if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in … a federal court in this state").

The bullet that took Ms. Reed's life is alleged to have been fired indiscriminately into the crowd of approximately 200 Pokey's patrons surrounding the affray by either Defendant Grant or Defendant LAQUIENT MACKLIN, a bodyguard of Defendant Grant's. (*Id.* at ¶¶ 15–16, 36–37, 54–56). The .45 caliber weapon that law enforcement ballistics tests later confirmed had fired the fatal bullet was purchased by and registered to Defendant Grant. (*Id.* at ¶ 55–56). Ms. Reed, who was unmarried, was twenty-two (22) weeks pregnant at the time of her death, and left behind three (3) surviving minor children who are Plaintiffs to this action. (*Id.* at ¶¶ 5, 6, 38). Ms. Reed's mother, Plaintiff Jollie Mae Igles, was appointed Administrator of the Estate of Korynda K. Reed by the Probate Court of Early County, Georgia, and guardian and personal representative of the minor children—her grandchildren—by the same court. (*Id.* at ¶¶ 7–8).

Plaintiffs filed their Complaint for civil damages in this Court on February 3, 2010. (Doc. 1). The Complaint states two Georgia state-law claims against Defendants: (i) a wrongful death claim brought by Plaintiff Igles as next friend of the decedent's minor children, who are named as Plaintiffs, *see* O.C.G.A. § 51–4–2, and (ii) a claim for pain and suffering and expenses brought by Plaintiff Igles as legal representative of the decedent's estate, *see* O.C.G.A. § 51–4–5(b). (Doc. 1 at ¶¶ 86–87). The Complaint asserts that diversity of citizenship exists because all of the Plaintiffs are domiciled in Alabama while Defendants Grant and MacKlin are domiciled in, respectively, Louisiana and Georgia. (*Id.* at ¶¶ 1–3, 10, 13). Defendants have denied liability in their Answer. (*See generally* Doc. 10).

Defendants' Motion to Dismiss (Doc. 21) does not request that the Court evaluate the substantive merits of Plaintiffs' claims, but rather challenges whether this Court

possesses subject matter jurisdiction over the matters presented in the Complaint. The Motion to Dismiss argues that the Complaint is legally incorrect in stating that complete diversity of citizenship exists in this case. (*See* Doc. 1 at ¶ 13). Specifically, the Motion to Dismiss agrees that Defendant MacKlin was legally domiciled in Georgia at the time of the filing of the Complaint (*see id.* at ¶ 3), but argues that Defendant Grant was legally domiciled in Georgia, not Louisiana, at such time (*see id.* at ¶ 2); the minor Plaintiffs were legally domiciled in Georgia, not Alabama (*see id.* at ¶ 10); and Plaintiff Igles in her capacity as the decedent's administrator was legally domiciled in Georgia, not Alabama (*see id.* at ¶ 1). The Motion to Dismiss (Doc. 21) argues that because Plaintiffs and Defendants are all citizens of the state of Georgia, diversity of citizenship is lacking and, accordingly, this Court has no subject matter jurisdiction over the purely state-law civil claims raised in the Complaint.

Defendant's Motion to Dismiss (Doc. 21) and Brief in Support thereto (Doc. 22) was filed on July 16, 2010. Plaintiffs' Response (Doc. 26) in opposition was filed on August 23, 2010, and Defendants filed a Reply (Doc. 27) on September 9, 2010. Upon review of the briefs, attachments thereto, and authorities cited therein, and having conducted its own relevant research, the Court found that additional limited briefing would aid the Court in deciding the Motion to Dismiss, and on January 7, 2011 entered an Order for subsequent briefing regarding the impact of O.C.G.A. § 29–2–22 generally, and O.C.G.A. § 29–2–22(b)(1) and (3) particularly, upon the law and facts of the above-captioned matter. (Doc. 28). Defendants filed their Supplemental Brief (erroneously entitled "Plaintiff's Supplemental Brief") on January 12, 2011 (Doc. 29), and Plaintiffs entered their Supplemental Brief on January 14, 2011 (Doc. 30).

The Court, finding that Defendants had waged a "factual attack"[2] on the Court's subject matter jurisdiction over the above-captioned matter and consistent with Eleventh Circuit instructions that "[i]n a factual challenge, 'the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss,'" *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1312 (11th Cir.2009), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, — U.S. —, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.1981)[3]), held an evidentiary hearing on March 4, 2011. (Doc. 31). At the hearing, all Parties had the opportunity to present evidence and make arguments regarding the domicile and diversity issues raised in Defendants' Motion to Dismiss.

The Motion to Dismiss (Doc. 21), being fully briefed and heard, is now ripe for ruling.

### DISCUSSION

Defendants' Motion to Dismiss asserts that this Court lacks jurisdiction over the state-law claims raised in the Complaint due to a lack of diversity of citizenship between Plaintiffs, who Defendants allege

are Georgia domiciles, and Defendant MacKlin, who indisputably is a Georgia citizen.[4] Plaintiffs claim that they are Alabama citizens, and thus that diversity of citizenship exists. Upon review of the law and the facts, the Court agrees that diversity does not exist as to any of the claims, and therefore that the Court has no jurisdiction over the matter. This action must be dismissed from this Court.

### I. RULE 12(b)(1) STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to assert by motion the defense of lack of subject-matter jurisdiction, and Rule 12(h)(3) requires the Court to dismiss an action if the Court finds that subject-matter jurisdiction is lacking. Fed.R.Civ.P. 12(b)(1) & 12(h)(3). This Court is mindful that "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir.1997) (citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir.1986)).

 "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys.*,

---

2. As explained by the Eleventh Circuit in *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1311–12 (11th Cir.2009), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, — U.S. —, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010):

 [T]here are two types of challenges to the existence of subject matter jurisdiction. "A 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir.2007) (internal quotations and alterations omitted). " 'Factual attacks,' on the other hand, chal-

lenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (internal quotations omitted).

3. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4. Defendants also contend that Defendant Grant is a Georgia citizen. (Doc. 22 at 4–5). Because the Court's disposition of the Motion to Dismiss is not affected by Defendant Grant's domicile, the Court elects not to address the question.

*Inc.*, 524 F.3d 1229, 1232 (11th Cir.2008). "A 'facial attack' on the complaint 're-quire[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir.2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). "Factual attacks," on the other hand, serve to "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* In a factual attack, the Eleventh Circuit states that a "[p]laintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir.1982); *see In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1312 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, —— U.S. ——, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) ("In a factual challenge, 'the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.'"); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.1981) (instructing that in a factual challenge the district court "must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss," and further stating that "[i]nsofar as the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence"). This Court has provided such an opportunity to Plaintiffs through the additional briefing ordered by the Court (Doc. 28; *see* Doc. 30 (Pls.' Supplemental Br.)), and the evidentiary hearing held before the Court on March 4, 2011. When, as the Court does *infra*, "the district court bases its decision on its own resolution of disputed facts it may be required, at the very least, to identify and explain the factual determinations it has made." *Williamson*, 645 F.2d at 414.

## II. FEDERAL DIVERSITY JURISDICTION

The Supreme Court of the United States states that:

> The district courts of the United States, as we have said many times, are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).... In order to provide a neutral forum for what have come to be known as diversity cases, Congress ... has granted district courts original jurisdiction in civil actions between citizens of different States.... [28 U.S.C.] § 1332.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). The Supreme Court explains that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff," which is known as the "rule of complete diversity." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (emphasis in original). According to the Supreme Court, the federal diversity statute, 28 U.S.C. § 1332, "clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." *Owen*, 437 U.S. at 374, 98 S.Ct. 2396. In determining diversity jurisdiction, the Supreme Court instructs federal courts to apply "the well-established rule that diversity of citizenship is assessed at the time the action is filed." *Freeport–McMoRan, Inc. v. KN Energy, Inc.*, 498

U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991). The Eleventh Circuit holds that "[w]here ... the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity." *King v. Cessna Aircraft Co.,* 505 F.3d 1160, 1171 (11th Cir.2007).

### III. OPERATION OF 28 U.S.C. § 1332(c)(2)

 The above-captioned action, which was filed on February 3, 2010, is comprised solely of two state-law claims, the types of which are uniquely treated by § 1332. As to the O.C.G.A. § 51–4–2 wrongful death claim brought by Ms. Reed's minor children via their legal representative, Plaintiff Igles, the federal diversity statute provides that:

> the legal representative of an infant ... shall be deemed to be a citizen only of the same State as the infant.

28 U.S.C. § 1332(c)(2). As to the O.C.G.A. § 51–4–5(b) claim for pain and suffering and expenses brought by Plaintiff Igles as legal representative of the decedent's estate, the federal diversity statute provides that:

> the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent.

28 U.S.C. § 1332(c)(2). Based upon these statutory provisions, it is the legal citizenship of Ms. Reed's minor children and of Ms. Reed herself that bears upon the Court's determination of the diversity question before it; Plaintiff Igles's own personal citizenship is of no moment, unless it somehow affects the domicile of the decedent or the children.

### IV. PLAINTIFFS' O.C.G.A. § 51–4–5(b) ESTATE CLAIM

 At the March 4, 2011 hearing, Plaintiffs conceded that diversity does not

exist regarding the O.C.G.A. § 51–4–5(b) claim brought by Plaintiff Igles as legal representative of the decedent's estate. As written in Plaintiffs' Response, the "Decedent was a resident of Blakely, Early County, Georgia at the time of her death." (Doc. 26 at 1). By operation of the diversity statute, then, Plaintiff Igles is deemed to be a Georgia citizen as the legal representative of Ms. Reed's estate. *See* 28 U.S.C. § 1332(c)(2). Because Defendant MacKlin is also a Georgia citizen, complete diversity is not found and this Court lacks diversity jurisdiction over the O.C.G.A. § 51–4–5(b) claim. *See Owen,* 437 U.S. at 374, 98 S.Ct. 2396 ("[D]iversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant.").

Plaintiffs request that the Court, if it finds diversity in the children's wrongful death claim, exercise supplemental jurisdiction over the estate claim rather than dismissing the estate claim for want of diversity. Because the Court finds, *infra,* that complete diversity is lacking in the children's wrongful death claim, the Court must deny the request for supplemental jurisdiction. Accordingly, Defendants' Motion to Hear and Determine Their First Defense—Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED** as to the O.C.G.A. § 51–4–5(b) claim brought by Plaintiff Igles as legal representative of the decedent's estate.

### V. PLAINTIFFS' O.C.G.A. § 51–4–2 WRONGFUL DEATH CLAIM

 Regarding the O.C.G.A. § 51–4–2 wrongful death claim, which in Georgia is brought by the children of the decedent,[5] the Court must determine the legal

---

**5.** O.C.G.A. § 51–4–2(a) ("The surviving spouse or, if there is no surviving spouse, a

child or children, either minor or sui juris,

domicile of the minor children on the date the Complaint was filed, February 3, 2010. For purposes of this determination, the Court will adopt the Complaint's assertion that the children were residing in Alabama on the filing date. (*See* Doc. 1 at ¶ 10 ("The children presently reside ... in ... Alabama.")).[6] For purposes of the Court's legal analysis regarding diversity of citizenship under § 1332, however, " '[d]omicile' is not necessarily synonymous with 'residence,' ... and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (citation omitted). In fact, "[f]or diversity purposes, ... mere residence in the State is not sufficient." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974). The children's claimed residency in Alabama when the Complaint was filed, then, is not enough to establish their citizenship[7] in that state.

 The law states that domicile "is the place of [a person's] true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir.2002). "Individuals ... are only citizens of the state in which they are domiciled ... and they have only one domicile." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir.2011). The state of one's birth becomes that person's initial domicile. *See*

*Choctaw Indians*, 490 U.S. at 48, 109 S.Ct. 1597 ("One acquires a 'domicile of origin' at birth, and that domicile continues until a new one (a 'domicile of choice') is acquired."); *Gregg v. La. Power & Light Co.*, 626 F.2d 1315, 1317 (5th Cir.1980) ("A person is almost universally considered to be a domiciliary of the State of his birth, unless and until a new domicile is acquired."). After that, "a change of domicile requires a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." *McCormick*, 293 F.3d at 1258 (internal quotation marks omitted).

 For children, however, there is a "presumed lack of capacity to form the requisite intention necessary to establish a separate domicile." *Arredondo v. Brockette*, 648 F.2d 425, 431 (5th Cir.1981). This is because "[a] minor is not *sui juris.*" *Medlin v. Church*, 157 Ga.App. 876, 278 S.E.2d 747, 749 (1981). Accordingly, "[s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." *Choctaw Indians*, 490 U.S. at 48, 109 S.Ct. 1597; *see* O.C.G.A. § 19–2–6(a) ("A person whose domicile for any reason is dependent upon that of another cannot effect a change of his own domicile."); O.C.G.A. § 19–2–4 (statutory provision regarding "Domicile of minor").

---

may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence."); *cf.* O.C.G.A. 51–4–5(a) ("When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51–4–2 ..., the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent.").

6. At the March 4, 2011 hearing, Defendants introduced evidence that they argue shows that the children may have resided in Georgia at all times relevant to the diversity discussion. Because the children's place of residence has no bearing on their legal domicile, the Court elects not to make a factual finding on the residency issue.

7. "For diversity purposes, citizenship means domicile." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974).

Applying the principles stated above, the Court finds that the Plaintiff children were originally Georgia domiciles because they were indisputably born in Georgia to a single mother who was a Georgia citizen. *See* O.C.G.A. § 19–2–4(a) ("The domicile of a minor child born out of wedlock shall be that of the child's mother.").

The question then becomes: between the February 3, 2008 death of Ms. Reed and the February 3, 2010 filing of the Complaint, did the children's domicile change from their original Georgia citizenship to citizenship in Alabama? In culling through Plaintiffs' briefs, which unhelpfully rely heavily upon Tennessee state and federal cases that carry no precedential value in this Georgia matter (*see, e.g.,* Doc. 26 at 4 (discussing *McElhaney v. Chipman*, 647 S.W.2d 643, 644 (Tenn.Ct.App. 1982))), the Court construes Plaintiffs' strongest argument to be as follows. Plaintiffs assert that the change in the minors' domicile was legally accomplished by Plaintiff Igles, as the minor's court-appointed permanent guardian, by virtue of O.C.G.A. § 29–2–21(a)'s provision that "[t]he power of a guardian over the minor shall be the same as that of a parent over a child." O.C.G.A. § 29–2–21(a). Plaintiffs argue that because "the guardian stand[s] in place of the parent," O.C.G.A. § 29–2–21(a), and because a parent has the ability to change her child's domicile to another state, then the transitive logic provides that Plaintiff Igles had the power to change her wards' citizenship from Georgia to Alabama—a power that Plaintiff Igles arguably exercised with the children. (*See* Doc. 30 at 3 ("[D]iversity jurisdiction would lie in the instant case due to the fact that the guardian of the minor children was a resident of the state of Alabama, that the minor children are being raised in Alabama and that all plaintiff's [*sic*] herein were domiciled in the State of Alabama at the time the instant case was filed.")).

Defendants argue that Plaintiff Igles, as court-appointed permanent guardian of the minors, lacked the authority to alter the children's citizenship from Georgia to Alabama without permission of the probate court that had established the guardianship. Upon review of the applicable provisions of the Georgia Code and the relevant facts of this case, the Court agrees with Defendants' assessment.

Georgia Code section 29–2–21, the statutory provision upon which Plaintiffs rely in arguing that a guardian has the same power as a parent to change a minor ward's domicile, addresses "Power of guardian over minor; obligations of guardians; [and] liability of guardian." O.C.G.A. § 29–2–21. The next statutory section, O.C.G.A. § 29–2–22, governs the "Authority of guardian; [and] appointment of guardian ad litem." O.C.G.A. § 29–2–22. The Georgia Code's separate treatment of a guardian's "power," O.C.G.A. § 29–2–21, and a guardian's "authority," O.C.G.A. § 29–2–22, suggests that one is not synonymous with the other, but rather that they are mutually exclusive legal terms of art. Thus, the Court finds that while the Georgia Code grants a permanent guardian, such as Plaintiff Igles, the same "power . . . as that of a parent over a child," O.C.G.A. § 29–2–21(a), it does not similarly bestow upon a permanent guardian the same limitless authority as that enjoyed by a parent. *Compare* O.C.G.A. § 29–2–21(a) *with* O.C.G.A. § 29–2–22(a), (b). The authority of a guardian, such as Plaintiff Igles, must be determined by statutory analysis.

Georgia Code section 29–2–22 contains the following relevant provisions regarding a guardian's authority:

(a) The appointment of a guardian shall vest in the guardian the exclusive power, without court order, to:

(1) Take custody of the person of the minor and establish the minor's place of dwelling within the state[.]

\* \* \*

(b) At the time of the appointment of the guardian or at any time thereafter, any of the following powers may be specifically granted by the court to the guardian upon such notice, if any, as the court shall determine, provided that no disposition of the minor's property shall be made without the involvement of a conservator, if any:

(1) To establish the minor's place of dwelling outside this state; ...

(3) To change the domicile of the minor to the minor's or the guardian's place of dwelling, in the determination of which the court shall consider the tax ramifications and the succession and inheritance rights of the minor and other parties[.]

\* \* \*

(c) Before granting any of the powers described in subsection (b) of this Code section, the court shall appoint a guardian ad litem of the minor and shall give notice to any natural guardian of the minor.

O.C.G.A. § 29–2–22. Additionally, Georgia Code section 29–2–19 provides the "Requirements of order granting permanent guardianship," and states in relevant part that:

An order granting permanent guardianship shall specify: ...

(1) A specific listing of any of the additional powers which are granted to the permanent guardian as provided in subsection (b) of Code Section 29–2–22[.]

O.C.G.A. § 29–2–19.

Defendants have entered exhibits relating to the extent of Plaintiff Igles's statutory authority as permanent guardian of the Plaintiff children. (Docs. 21–1, 21–2, 21–3, 29–1). In the Petition for Permanent Letters of Guardianship of Minor that Plaintiff Igles submitted for each of the three Plaintiff children to the Probate Court of Early County, Georgia, an "X" is marked on the form indicating that "The Petitioner ... is not seeking expanded powers under O.C.G.A. § 29–2–22." (Doc. 21–1 at 7 ¶ 12, Doc. 21–2 at 7 ¶ 12, Doc. 21–3 at 7 ¶ 12). In the Orders of the Probate Court of Early County, Georgia, granting Plaintiff Igles permanent guardianship of each of the three Plaintiff children, Judge Tonya Holley did not mark the form giving Plaintiff Igles any of "the following powers set forth in O.C.G.A. § 29–2–22(b)," including "(i) to establish the minor's place of dwelling outside the state," and "(iii) to change the domicile of the minor to the minor's or guardian's place of dwelling[.]" (Doc. 21–1 at 11, Doc. 21–2 at 11, Doc. 21–3 at 12). Finally, Defendants have submitted the Affidavit of Hon. Tonya Holley, which states that Plaintiff Igles has never requested nor been granted the expanded power under O.C.G.A. § 29–2–22(b) to change the Plaintiff children's place of dwelling or domicile to a location outside of Georgia. (Doc. 29–1 at 2–4 at ¶¶ 7–10). Based upon these exhibits, Defendants argue that Plaintiff Igles never had the legal authority to change the Plaintiff children's legal domicile from Georgia to Alabama, and accordingly that complete diversity of citizenship is not found in the O.C.G.A. § 51–4–2 wrongful death claim because the Plaintiff children and Plaintiff MacKlin were Georgia domiciliaries at the time that the Complaint was filed.

At the March 4, 2011 hearing, Plaintiffs attempted to counter this argument by attacking O.C.G.A. § 29–2–22(b) as being unclear and allowing for alternative avenues by which a permanent guardian can change a minor ward's domicile to somewhere outside of Georgia. Plaintiffs honed

in on the word "may" in the statute, arguing that the phrase "any of the following powers *may* be specifically granted by the court to the guardian," O.C.G.A. § 29–2–22(b) (emphasis added), should be interpreted to mean that a guardian need not seek those powers exclusively from the probate court, but could obtain the authority from another source. Plaintiffs did not suggest any alternative sources, and did not expressly state the procedure by which Plaintiff Igles obtained the authority to alter the Plaintiff children's domicile to Alabama. Defendants, in their closing argument, asserted that the statute was clear and that the use of the word "may" therein gave the probate court—which exercises exclusive jurisdiction over guardianship matters—discretion in granting or denying the additional powers requested by the guardian. Defendants argued that petitioning the probate court was the only way in which Plaintiff Igles could have altered the Plaintiff children's citizenship, which the evidence shows never occurred.

 The Supreme Court of Georgia holds that "[t]he construction of statutes must square with common sense and sound reasoning," *Tuten v. City of Brunswick*, 262 Ga. 399, 418 S.E.2d 367, 370 (1992), and that "[i]f the plain language of the statute is susceptible of only one meaning, courts must follow that meaning unless to do so would produce contradiction or absurdity." *Sizemore v. Georgia*, 262 Ga. 214, 416 S.E.2d 500, 502 (1992). Additionally, Georgia courts are instructed to follow "a familiar rule of construction, where a statute is susceptible of two constructions, that it should be construed in harmony with the general policy of the law, rather than against it." *Singleton v. Close*, 130 Ga. 716, 61 S.E. 722, 724 (1908).

This Court finds that a plain, common-sense reading of O.C.G.A. § 29–2–22(b) shows that it is susceptible to only one meaning—the meaning advocated by De-

fendants—and that even if it were susceptible to two constructions, the construction advanced by Defendants is more in harmony with the general law than the construction advocated by Plaintiffs.

 Georgia Code section 29–2–22(b) states that "any of the following powers *may* be specifically granted by the court to the guardian." O.C.G.A. § 29–2–22(b) (emphasis added). This Court's plain reading of this provision is that a probate court has the discretion to give the enumerated powers to a guardian or withhold them from the guardian. The Supreme Court of Georgia holds that "[t]he term 'may' in a statute ordinarily denotes permission," *Henderson v. McVay*, 269 Ga. 7, 494 S.E.2d 653, 655 (1998), and this notion is codified at O.C.G.A. § 1–3–3(10) (" 'May' ordinarily denotes permission and not command."). Additionally, the United States Supreme Court holds that "[t]he word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

The Court's plain reading of O.C.G.A. § 29–2–22(b) does not support Plaintiff's argument that the use of "may" gives the guardian the discretion to seek the O.C.G.A. § 29–2–22(b) enumerated powers from another source. Even if the Court were to agree with Plaintiff's construction, such an interpretation would cause O.C.G.A. § 29–2–22(b) to fall into disharmony with other sections of the Georgia Code. To wit:

- The "[p]robate courts['] … authority … to exercise original, exclusive, and general jurisdiction of … [t]he appointment and removal of guardians of minors," O.C.G.A. § 15–9–30(a)(5), would be nullified because the interpretation would suggest that such authority lies outside of the probate courts.

- There would be no reason for the Georgia legislature to have differentiated between the "exclusive power" vested in a guardian in O.C.G.A. § 29-2-22(a) and the additional "following powers" enumerated in O.C.G.A. § 29-2-22(b).
- There would be no reason for the Georgia legislature to have further differentiated between the O.C.G.A. § 29-2-22(a) and O.C.G.A. § 29-2-22(b) powers by O.C.G.A. § 29-2-22(c)'s requirement for the appointment of a guardian ad litem prior to the granting of any O.C.G.A. § 29-2-22(b) powers.
- The statutory requirement that "[a]n order granting permanent guardianship shall specify: . . . [a] specific listing of any of the additional powers which are granted to the permanent guardian as provided in subsection (b) of Code Section 29-2-22," O.C.G.A. § 29-2-19(2), would be nullified.
- The statutory provision that "[a] guardian cannot change the domicile of his ward by a change of his own domicile or in any other fashion so as to interfere with the rules of inheritance or succession or otherwise to affect the rights of inheritance of third persons," O.C.G.A. § 19-2-6(b), would be nullified.
- There would be no need for the Georgia legislature to have restricted the geographic boundaries of the domicile provision that "[i]f there is no legal custodian, the child's domicile shall be that of his guardian if the guardian is domiciled in this state," O.C.G.A. § 19-2-4(b).
- There would be no need for the Georgia legislature to have restricted the age limitations of the domicile provision that "[p]ersons of full age who for any cause are placed under the power of a guardian have the same domicile as the guardian," O.C.G.A. § 19-2-5.

Because Plaintiffs' construction of O.C.G.A. § 29-2-22(b) would create disharmony with many sections of the Georgia Code, this Court must reject Plaintiffs' interpretation of the statute.

Permanent guardianship in Georgia is a creature of statute. The statutory scheme clearly requires that a permanent guardianship be sought exclusively in the probate courts, O.C.G.A. § 15-9-30(a)(5); that a permanent guardian shall have the same power over a child as a parent, O.C.G.A. § 29-2-21(a); that a permanent guardian has exclusive authority with regard to certain matters, such as changing the child's dwelling within the State of Georgia, O.C.G.A. § 29-2-22(a); but that a permanent guardian's authority over other matters, such as changing the dwelling or domicile of the child outside of Georgia, must be expressly granted at the probate court's discretion only after appointment of a guardian ad litem, O.C.G.A. § 29-2-22(b), (c). Plaintiff Igles availed herself of this statutory scheme when she petitioned for permanent guardianship of the Plaintiff children pursuant to O.C.G.A. § 29-2-17. Plaintiffs cannot now ignore the statutory scheme, particularly O.C.G.A. § 29-2-22(b), in claiming that the Plaintiff children were Alabama citizens on the date the Complaint was filed.

The Court finds that the citizenship of the Plaintiff children was not legally changed from Georgia to Alabama prior to the Complaint's filing, and thus that the Plaintiff children were Georgia domiciliaries on February 3, 2010. Because Defendant MacKlin was also indisputably a Georgia citizen on the date that the Complaint was filed, the Court finds that complete diversity of citizenship is lacking. *See* 28 U.S.C. § 1332; *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373,

98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Accordingly, Defendants' Motion to Hear and Determine Their First Defense—Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED** as to the O.C.G.A. § 51–4–2 wrongful death claim brought by the Plaintiff children by their permanent guardian, Plaintiff Igles.

### CONCLUSION

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction over the two state-law claims raised in the Complaint (Doc. 1), because complete diversity of citizenship is lacking between the Plaintiffs, who were Georgia citizens when the Complaint was filed, and Defendant MacKlin, who is also a Georgia citizen. Accordingly, Defendants' Motion to Hear and Determine Their First Defense—Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED**. Additionally, because the Court finds that it lacks subject matter jurisdiction, it "must dismiss the action." Fed.R.Civ.P. 12(h)(3). This Court well understands that a plaintiff's choice of venue, for whatever reason that choice is made, is given great deference. Federal courts being of limited jurisdiction, however, when a question of federal law is not raised and complete diversity of citizenship between the parties is not found, dismissal from the Federal forum must occur for want of subject matter jurisdiction no matter how much deference is afforded to the plaintiff's initial choice.

Plaintiffs have requested that the Court, in finding for Defendants, make the dismissal without prejudice so that they may avail themselves of O.C.G.A. § 9–2–61(c), which provides for renewal of a case in the Georgia courts "if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in . . . a federal court in this state." O.C.G.A. § 9–2–61(c). The Court grants this request. Accordingly, it is **ORDERED** that the above-captioned action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.